THE STATE, THE NEWARK AQUEDUCT BOARD, RELATORS, v. THE MAYOR AND COMMON COUNCIL OF THE CITY OF NEWARK.

1. The sinking fund authorized by the act entitled "An act to authorize the mayor and common council of the city of Newark, to purchase the property of the Newark Aqueduct Company, and creating the Newark Aqueduct Board," approved March 20th, 1860, was created to pay and redeem the bonds issued under the authority of that act.

2. All bonds issued under that act, having been paid and redeemed before the year 1887, the common council was not required to insert in the tax levy of that year the sum of $3500, to be raised and paid to

the Newark Aqueduct Board, for the purpose of increasing said sinking fund.

3. Even if the bonds issued under the act of 1860 had been paid, from proceeds of other bonds subsequently issued, under supplements to the original act, the right of taxation to raise annually said sum of $3500 for the use of a sinking fund to pay and redeem the *new* bonds, would not exist, unless especially authorized by statute.

4. Authority to levy a tax should be clearly expressed, and not left to inference.

Application for *mandamus* to compel the common council to raise the tax refused.

This opinion not to affect any assessment or collection of taxes which have been placed in the tax levy by the common council, under the authority of the act of 1869.

Argued at June Term, 1887, before Justices VAN SYCKEL, MAGIE and PARKER.

For the relators, *E. L. Price.*

For the defendants, *Joseph Coult.*

The opinion of the court was delivered by

PARKER, J. This is an application, on relation of the Newark Aqueduct Board, for a writ of *mandamus,* to be directed to the common council of the city of Newark, to compel said common council to proceed forthwith to raise, by tax, the sum of $3500, to be used to increase a fund for the payment of certain bonds, which had been issued pursuant to the provisions of an act entitled "An act to authorize the mayor and common council of the city of Newark to purchase the property of the Newark Aqueduct Company, and creating the Newark Aqueduct Board," approved March 20th, 1860, and the several supplements thereto.

By the said act of 1860, provision was made for the purchase, by the city of Newark, of the property, rights and franchises of the Newark Aqueduct Company, a corporation

(which had been chartered as early as the year 1800), for the purpose of supplying the said city with water. The said act provided for the creation of a corporation called the Newark Aqueduct Board, with authority to take and hold, for and in the name of the mayor and common council of the city of Newark, all the property purchased from the Newark Aqueduct Company, by the city, and all other property which might be necessary or convenient to accomplish the purposes contemplated. For the purpose of paying the cost of purchasing the capital stock and property of the Newark Aqueduct Company, the aqueduct board was authorized, in the name of "the mayor and common council of the city of Newark," to issue bonds, first, to the amount of $150,000 ; secondly, to the amount of $100,000, and thirdly, to the amount of $150,000, which last-named bonds, and the proceeds of the sale thereof, were to be appropriated to the redemption of the issue first above mentioned.

By the twenty-fourth section of the act of March 20th, 1860, it was provided that in order to create a fund for the payment of said bonds authorized by said act, at maturity, "the mayor and common council of the city of Newark" should annually raise, by tax, the sum of $3500, *until said bonds should be paid and redeemed ;* and the said aqueduct board was further authorized and required to invest the said sum from time to time, together with such net revenue as from year to year might remain in their hands, as a sinking fund for the redemption of said bonds.

It appears that all the bonds authorized by the act of March 20th, 1860, were issued by the said aqueduct board, and that the first issue of $150,000 was subsequently taken up by the third issue of the same amount, thus leaving outstanding, when the first issue was redeemed, bonds authorized by said act of 1860 amounting to $250,000, being the sum limited by the twenty-first section of said act as the permanent indebtedness of the city to be incurred by said aqueduct board.

For twenty-six years the sum of $3500 has been placed in the tax levy annually by order of the common council. This

year it was stricken out by resolution of council on the ground that all the bonds authorized by the act of 1860, to secure the payment of which the said sinking fund was created, had been paid. The proofs show that all the bonds issued under the act of March 20th, 1860, were paid, the last having been redeemed in the year 1869. The only question raised as to the payment of the bonds is in reference to *four*, for the payment of $10,000 each, which will become payable in 1892. The relators insist that those bonds are part of the $100,000 issue authorized by the act of 1860. But the evidence shows that they were not issued under that act, but under an act approved March 26th, 1873. The printed form endorsed on each of said bonds is convincing proof of this. The clause referred to reads as follows, viz.: "The above-mentioned sum being part of an issue of bonds to the amount of $500,000 authorized to be issued by the act of the legislature of the State of New Jersey," approved March 26th, 1873.

The sinking fund in question was created by the act of March 20th, 1860, to pay the bonds issued under that act, and as that act requires the city to raise by tax, annually, $3500, to be paid to the aqueduct board *until such bonds should be paid and redeemed,* it follows that if all said bonds were paid before 1887, the common council did right it striking out that sum from the tax levy of that year.

The relators claim that there was subsequent legislation which not only continued the sinking fund but, in effect, required the continuance of the annual payment to the aqueduct board of the specific sum of $3500 after the bonds authorized by the act of 1860 were paid. It is said that the bonds issued under the act of 1860 were paid from the proceeds of bonds issued under subsequent laws, and therefore it is argued that the $3500 should continue to be paid annually by the city to the aqueduct board. This does not follow. Even if the proceeds of new bonds were used to redeem the old, so long as the holders of the original bonds voluntarily accepted the new issue, the payment of $3500 by the city to augment the sinking fund would not be continued for the purpose of redeeming

the new issue, unless so directed by express legislation. In none of the supplements was there such a provision.

By various laws, subsequent to the original act, the aqueduct board was authorized from time to time to issue other bonds to an amount in all of over $3,000,000. In those several supplements was the following provision, viz.: "And said bonds shall be issued in the same manner, and under the same rules and regulations, and with the same liability for payment of the same on the part of the city of Newark, as are prescribed in the act to which this is a supplement." On the part of the relators it is contended that from the above language in the several supplemental acts, the inference arises that the annual specific tax of $3500 was required to be raised by the city and paid to the aqueduct board, for the use of a sinking fund, to redeem the bonds issued under the authority of the several supplements, notwithstanding that the express language of the original act limited the raising of that tax for the sinking fund to the time when the bonds issued under the act of 1860 were paid. No such inference can be drawn. The clause in the several supplemental acts above quoted is to be construed in connection with and as referring to the fifth section of the original act, which points out the manner of issuing the bonds and the liability of the city for their payment. That section provides that all contracts and obligations of the aqueduct board should be obligatory upon, and considered in law to be done by the "mayor and common council of the city of Newark," and that all the real estate within the city of Newark should be liable for the payment of the principal and interest that should become due on the bonds or obligations to be issued. That was the liability contemplated by the language of the supplements above stated, and not the continuance of the specific annual tax of $3500, which the act of 1860 declared should cease when the bonds issued under it should be redeemed and paid. Had the legislature intended to continue that specific tax to augment the sinking fund, words would have been found to express such intention. The

authority to levy a tax for a certain purpose should be clearly expressed, and not left to inference.

As before stated, the last of the bonds issued under the act of 1860 were paid in 1869. In the year last mentioned a different mode of sustaining and augmenting a sinking fund was devised. The second section of the supplement passed in 1869 required that at the beginning of each year the aqueduct board should make an estimate of the amount of money which would be necessary (in addition to the net revenue from the works), to enable the board to pay interest on the water bonds and report the same to the common council, and the common council was thereupon required to levy and assess the sum estimated under the tax ordinances of the year, to be collected as other taxes were collected.

The rules and regulations under the original act, alluded to in the clause above quoted, had reference to the requirement that the aqueduct board should issue bonds in the name of the city of Newark, to be denominated "Newark City Water Bonds," with coupons, countersigned by the mayor, &c.

The specific tax of $3500, authorized and directed by the act of March 20th, 1860, to be raised by the common council annually, and paid to the aqueduct board to augment a sinking fund to pay the bonds issued under said act, until all such bonds should be paid and redeemed, was not required to be placed in the tax levy by the common council of the city of Newark in the year 1887, and the council did right in striking it out.

This opinion is not intended to interfere with the assessment and collection of taxes which may have been placed in the tax levy under the authority of the act of 1869.

The fact that the common council, for several years after all the bonds issued under the act of 1860 had been redeemed and paid, continued to insert the $3500 in the tax levy, has no legal bearing upon the question before the court. If the common council in former years ordered a tax raised, which they were not bound legally to order to be assessed, it is no

Williams v. Bettle.

reason why a *mandamus* should issue, compelling them to place the amount in the tax levy of a subsequent year.

The application for a *mandamus* is refused.