THE TOWNSHIP OF MIDDLETOWN ET AL., PROSECU-
TORS, v. ALBERT L. IVINS ET AL., DEFENDANTS.

BOROUGH OF KEANSBURG ET AL., PROSECUTORS, v. AL-
BERT L. IVINS ET AL., DEFENDANTS.

BOROUGH OF MANASQUAN ET AL., PROSECUTORS. v. AL-
BERT L. IVINS ET AL., DEFENDANTS.

BOROUGH OF HIGHLANDS ET AL., PROSECUTORS, v. AL-
BERT L. IVINS ET AL., DEFENDANTS.

TOWNSHIP OF NEPTUNE ET AL., PROSECUTORS, v. AL-
BERT L. IVINS ET AL., DEFENDANTS.

BOROUGH OF BRADLEY BEACH ET AL., PROSECUTORS, v.
ALBERT L. IVINS ET AL., DEFENDANTS.

CITY OF ASBURY PARK ET AL., PROSECUTORS, v. ALBERT
L. IVINS ET AL., DEFENDANTS.

Argued May 6, 1925—Decided October 21, 1925.

1. In proceedings taken by a county board of taxation to increase
the assessed value of properties in various taxing districts of the
county pursuant to section 507 of the Tax act of 1918 (*Pamph.
L.*, p. 866), it is immaterial how or from what source the county
board obtained its information that such properties were not being
assessed at their true value, and the fact that the information
came partly from the state board of taxes and assessments, at
whose request the proceedings were taken, does not affect the
legality of the proceedings.

2. The action of the county board of taxation, under section 507
of the tax act of 1918 (*Pamph. L.*, p. 866), in increasing the
assessed value of properties not truly valued, will be deemed to
have been made "after investigation" as required by that sec-
tion, when it appears that the members of the board were thor-
oughly familiar with the values of property in the taxing dis-
tricts involved, that they went into all such districts and made
a general inspection and investigation of the properties in such
districts, and when it further appears that no complaint is made

that any of the properties were assessed by the board at more than their true value.

3. No notice is required to be given to the taxing districts or to individual property owners of a proceeding by the county board of taxation under section 507 of the Tax act of 1918 (*Pamph. L., p.* 866), whereby the board increased the assessed value of properties in various taxing districts of the county not truly valued.

On writs of *certiorari.*

Before Justices TRENCHARD, KATZENBACH and LLOYD.

For the prosecutors, *McCarter & English (Conover English,* of counsel).

For the respondents, *Edward L. Katzenbach,* attorney-general, and *Harry R. Coulomb,* assistant attorney-general.

The opinion of the court was delivered by

TRENCHARD, J.   The writs in these seven cases bring up for review proceedings of the Monmouth county tax board, whereby the valuations of properties made by the assessors, in the respective municipalities named, were increased by the county board.

The prosecutors in each case are the municipality and individual taxpayers.

The first reason assigned for setting aside such proceedings is that: "The entire proceedings for increase in the 1925 assessments were predicated and founded on a table of percentages arrived at by the field secretary of the state board of taxes and assessments, which percentages were arrived at, not by the viewing or inspection of the properties or other investigation, but by the mere clerical method of examining the records in the county clerk's office and comparing the assumed purchase price, as judged by the stamp on the deed, with the valuation as appears on the books of the assessor for the year 1924, as of October 1st, 1923."

We think that this reason is ill-founded in point of fact.

It is true that the county board of taxation was informed by the state board of taxes and assessments that the assess-

ments in certain districts in Monmouth county were far below the true value of the property, and the county board was instructed to notify the assessors in the various districts to increase the assessments, and that, in compliance with this request, the county board notified the assessors to increase the *total assessments* in their respective districts by certain specific amounts, and also furnished the respective assessors with copies of the result of the investigation made by the field secretary of the state board.

But these matters do not affect the legality of the subsequent action of the county board in increasing the assessed valuations of the properties in question. The validity of the action of the county board in increasing the assessed values in these particular cases depends entirely upon whether or not these proceedings are in accordance with section 507 of the Tax act of 1918 (*Pamph. L., p.* 866), and we think they were, as we shall hereafter more fully point out. By section 2 of chapter 120 of the laws of 1906 (*Pamph. L., p.* 210)—which act is a supplement to the Tax act of 1903, and provides for the establishment of county boards of taxation—it is provided that "the duty of said boards shall be to secure the taxation of all property in the various counties of this state at its true value, in order that all property, except such as shall be exempt by law, shall bear its full, equal and just share of taxes." In the performance of this duty, the county board was not only justified but obliged to direct the attention of the respective assessors to the fact that property was not being assessed at its true value, and it makes no difference where this information came from, or how it was obtained. It might have come from an individual taxpayer; it might have come from the state board of taxation, or it might have been, as it was in all of these cases, partly the result of information communicated to them by the state board, at whose request they acted, and partly, as appears from the testimony, the result of their own knowledge and information concerning the failure of the assessors in the respective taxing districts to properly assess real and personal property.

The prosecutors' second reason is that: "Section 507 of the General Tax act provides that the county board shall have power to investigate, and, after investigation, to revise, correct and equalize the assessed value of all property in the respective taxing districts. The said tax board ordered its increased assessments throughout the county without having investigated as required by the act."

This point, likewise, is not well founded in point of fact.

Section 501 of the Tax act of 1918 (*Pamph. L., p.* 862) provides that the assessor shall begin the work of making assessments upon real and personal property upon the 1st day of October in each year, and shall complete the same by the 10th day of January following, on which date he shall attend before the county board of taxation and file with the board his complete assessment list, and a true copy thereof, to be called the assessor's duplicate, properly made up and legibly written in ink, to be by said board examined, revised and corrected, as in the act provided.

Section 502 provides that the assessor, before filing the complete assessment list and duplicate, shall give public notice by advertisement in at least one newspaper circulating within his taxing district of a time and place, when and where the assessment list may be inspected by any taxpayer for the purpose of enabling such taxpayer to ascertain what assessments have been made against him or his property, and to confer, informally, with the assessor as to the correctness of the assessment, &c.

Section 503 requires the state comptroller, on or before the 1st day of February of each year, to transmit to the state board of education and to the county collector of each county, a statement of the amount of tax appropriated by the state for that year and to be raised by taxation for the publiic schools, and to transmit to the county collector a statement of the amount, if any, necessary to be raised by general taxation for state purposes in the county, and also requires the county collector to lay such statements before the county board of taxation, and the latter to apportion the amount required among the taxing districts, &c.

Section 504 requires the county collector, on or before the 1st day of March, to transmit to the county board of taxation a statement of the total amount appropriated by the board of chosen freeholders to be raised for current expenses, interest, &c.

Section 505 requires the municipal clerk, or other proper officer of each taxing district, to transmit to the county board of taxation a copy of the annual taxing ordinance or resolution showing the amount to be raised by taxation for the purposes of the taxing district, &c.

Section 506 provides that the clerk, or other proper officer of each school district, shall, on or before the 1st day of March, transmit to the county board of taxation a certified statement of the amount of moneys appropriated for school purposes in such school district.

Section 507 provides that, upon the filing of the assessment list and duplicates by the assessors with the county board of taxation, as provided by section 501, the board shall meet for the purpose of examining, revising and correcting the tax list and duplicates; it provides for the attendance of any assessor before the board at such time and place as it may direct; that the assessor shall, under the direction and supervision of the board, make up and prepare corrected tax lists and duplicates; that the board "shall have the power, after investigation, to revise, correct and equalize the assessed value of all property in the respective taxing districts; to increase or decrease the assessed value of any property not truly valued; to add to said lists and duplicates any property which has been omitted or overlooked, at its true value, and, in general, to do and perform all acts and things necessary for the taxation of property in said county equally and at its true value."

Now, the proofs show that the members of the county board were thoroughly familiar with the values of property in the respective taxing districts; that they went into all of the taxing districts now involved (with the exception of the borough of Highlands, where the assessments now complained of were made by the assessor), and made a general inspection

and investigation of the properties in those districts, and it is significant that no complaint whatsoever is made that any properties were assessed at more than their true value. The duty of the county board, in the respect now in question, was, "after investigation * * * to increase or decrease the assessed value of any property not truly valued." In view of what the county board did by way of investigation, and the fact that there is no complaint that these increased valuations were in excess of the true value of the property, it cannot be said that the board failed to perform its duty "to secure the taxation of all property * * * at its true value, in order that all property, except such as shall be exempt by law, shall bear its full, equal and just share of taxes," in the manner provided by law.

The third and last reason assigned by the prosecutors is that: "No notice of any investigation by the said tax board was given the prosecutor prior to the ordering of the increase of the assessments, and no opportunity was given the prosecutors to be heard."

We think that the law does not require any such notice to be given.

The assessment as originally made by the assessor does not become the assessment upon which the taxes are finally paid until after the county board of taxation has, under section 507, revised, corrected, equalized values, and increased or decreased the assessed value of any property not truly valued, and added property which has been omitted or overlooked, and, in general, until it has done all things necessary for the taxation of all property equally and at its true value.

After having done all these things, as required by section 507, the county board, under the provisions of section 509, "shall, on or before the 1st day of April in each year, cause the corrected, revised and completed duplicates certified by said board, to be a true record of the taxes assessed, to be delivered to the respective collectors of the various taxing districts in their respective counties, and the said tax list shall remain in the office of said board as a public record."

The effect of these provisions is to make the action of the county board in increasing valuations an administrative act

and not a judicial one. Furthermore, while section 502, article 5 of the Tax act of 1918, provides that the assessor, before filing the completed assessment list and duplicate with the county board, shall give public notice by advertisement of a time and place, when and where the assessment list may be inspected, no provision is made in section 507 of the same article that the county board shall give notice either to the taxing district or to the individual property owner. So far as the taxing district is concerned, it is supposed to be represented by the assessor. In these particular cases the assessors were notified to appear, and some did, but others did not. In every situation where the legislature has deemed it necessary that notice should be given, it has provided for notice in the act, and, not having provided for notice by the county board in performing its duty under section 507, the legislature evidently intended that none was to be given. In this connection it must be borne in mind that the effect of what the county board did is to raise the particular assessment, and if the individual taxpayer is aggrieved he has a right of appeal.

The case of *Jersey City* v. *Board of Equalization of Taxes,* 74 *N. J. L.* 753, is not in point. That was a review of a proceeding by the state board of equalization of taxes. The distinction between that case and these is clearly apparent. In that case the state board was acting as a reviewing board, reviewing the action of the local assessor and the county board of taxation. After the review, it was required to render its findings in the shape of a judgment. This imported, as Mr. Justice Pitney says, a judicial trial and determination. In the present cases the valuation or assessment made originally by the asssessor, and returned to the county board of taxation, was not a completed assessment, and did not become such until acted upon by the county board, which does not render a judgment, but acts upon its own information and knowledge, and, after investigation, makes the changes necessary in order to perform its duty of seeing that property is taxed equally and at its true value.

In *Union* v. *Hudson County Board of Taxation,* 77 *N. J. L.* 178, as in these cases, the county board of taxation, by

resolution, declared that the value of the real estate, as assessed in the duplicate to certain owners therein named, was relatively less than the value of the other property in the county, and the assessor was directed to amend his duplicate by increasing the taxable valuation to the extent indicated by the county board. The court there pointed out that the duty (among others) of the county board of taxation is "to increase or decrease the assessed value of the property not truly valued;" that it "has the power to correct and revise the value of all taxable property, and to require the respective assessors to amend their duplicates or lists of taxable property so that they conform to the values fixed by the board," and that, "unless the county board of taxation violate some legal principle in *making the assessments,* its action is not reviewable by *certiorari* on the application of a taxing district or of an individual, *because, in performing that duty, they are merely aiding the assessors* in arriving at the true value of the respective properties in the taxing district, and a mistake in valuation is only an error of judgment which each taxpayer may have corrected" by appeal.

The proceedings brought up with each writ will be affirmed.