## NEW JERSEY BELL TELEPHONE COMPANY, PROSECUTOR, v. THE CITY OF NEWARK, RESPONDENT.

Submitted May term, 1937—Decided July 30, 1937.

Before Justices BODINE, HEHER and PERSKIE.

For the prosecutor, *Frankland Briggs, Leonard A. Sweeney, J. Henry Harrison* and *Robert F. Darby.*

For the respondent, *Frank A. Boettner* and *John A. Matthews.*

The opinion of the court was delivered by

PERSKIE, J. The basic issue upon the return of this writ of *certiorari* concerns the proper method of determining the true value of the tangible and intangible personalty of the New Jersey Bell Telephone Company for the purposes of taxation under *Pamph. L.* 1918, *ch.* 236, *p.* 847, as amended.

The taxing authority for the city of Newark, the board of assessment and revision of taxes, fixed the value of the telephone company's personal property including tangibles and intangibles, for the year 1935, at $24,000,000. On appeal this

figure was reduced to $22,265,000 by the Essex county board of taxation, and prosecutor sought a further reduction from the state board of tax appeals so that its property would be valued at $14,612,845. The state board, however, refused any further reduction and entered judgment affirming the assessment made by the Essex county board of taxation. This court granted *certiorari*.

The parties have stipulated that, exclusive of cash on hand, prosecutor's *intangible* personalty had a value on the assessing date, October 1st, 1934, of $1,393,485, which item was admittedly subject to taxation. It is also stipulated that the total cash on hand amounts to $1,626,024, but prosecutor challenges the right to tax this item alleging that it is entitled to an exemption under *Pamph. L.* 1933, *ch.* 165, *p.* 346. This is not so. The cash is subject to taxation. *Newark* v. *New Jersey State Board of Tax Appeals and Broadbank Corp.,* 118 *N. J. L.* 131; 191 *Atl. Rep.* 843. It is, therefore, apparent that at least so far as the intangible personalty is concerned, the county board of taxation committed no error. The assessment of intangibles should include the stipulated sum of $1,393,485 plus the total cash of $1,626,024, making a grand total of assessable intangibles of $3,019,509.

The tangible personalty of the company consisted of a telephone plant located in Newark including materials and supplies therein located, poles, wires, equipment, conduits, office furniture and fixtures, &c. This property the board apparently valued at $19,245,491. Prosecutor seeks to reduce this figure to $13,219,000 and to that end produced an expert who testified that in his opinion the latter figure was the true value of the tangible property in question. The expert arrived at his conclusion after approaching the problem by three different methods and then combining all three. The first method was through a study of the book cost of the company and the depreciation reserves. The book cost of the company amounted to $24,657,214. From this figure were subtracted two items—(1) $702,863 which represented the cost of paving underground conduits and which was subtracted since it was not considered in the nature of an asset;

(2) $720,000 was also deducted as representing unproductive labor due to time lost because of bad weather, holidays, vacations, company schools and for plant inspection. This left an adjusted book cost of $23,234,351. Working on a basis of twenty-six per cent. as the proper depreciation, the expert then applied this percentage to the adjusted book costs leaving a total of $17,193,420. To this figure he added the depreciated value of material and supplies thus getting a total depreciated book cost as adjusted of $18,245,233. The expert found that for the five years ending 1935 the company realized a return of 4.907 per cent. on its depreciated book value. Treating six per cent. as a fair return, he found that the return actually realized was 81.8 per cent. of a fair return. He, therefore, took 81.8 per cent. of the total adjusted book cost of $18,245,233 and reached a figure of $14,924,600 as the final result of his first approach to the determination of the true value of the tangible property.

The expert's second approach was more simple. He used tables put out by the state tax commission in 1924 for the purpose of valuing telephone and telegraph companies, using the state's units as far as possible and where there were no available units, the company's depreciated book value was used. By this method the expert arrived at the figure of $14,982,914 as the final result of his second theory by which he determined the true value of the tangible property.

The third method of approach was based on a capitalization of the net earnings of the New Jersey Bell Telephone Company, and an allocation to the city of Newark of a part thereon on the basis of station installation. The result was reached in the following manner: the average earnings of the company for the five-year period from 1931 to 1935 were $7,864,982. These earnings were capitalized at the return rate of six per cent. and the resultant capitalization value of $131,083,000 was determined. From this figure was deducted the sum of $935,582 representing the average franchise taxes for the same five-year period. This sum when capitalized at six per cent. gives a franchise value of $15,592,000 which when deducted from the aforementioned capitalization value

leaves a total of $115,491,000 which represents the capitalized value of the company's tanagible fixed property. Of this, 85.95 per cent. is personal property, and thus 85.95 per cent. of $115,491,000 represents the capitalized value of the company's plant and equipment. That sum is $99,264,515. On the basis of station installation, the city of Newark represents 12.26 per cent. of the property of the company. Thus 12.26 per cent. of $99,264,515 equals $12,169,830 which represents the capitalized value of the tangible personalty in Newark as of September 30th, 1934. To this figure was added the sum of $1,051,813 which represents the value of the materials and the supplies giving a total value of tangible personalty of $13,221,643 which is the final result of the expert's third theory by which he determined the true value of the company's tangible property.

The expert then weighed the results of these three different approaches in the following manner in order to reach a figure as to the actual true value of the company's tangible personalty in the taxing district of Newark. He ascribed a factor 1 to the depreciated book costs; a factor 1 to the state board tables method of approach; and a factor 3 to the result reached on the basis of capitalized net earnings. The total amount was then divided by five (the sum of all factors) and this gave the weighted average of $13,914,490. From this figure there was a five per cent. reduction for unseen contingencies such as storms, floods, explosions, &c. This left a total of $13,218,765 which for convenience sake is put in round numbers at $13,219,000 which represents prosecutor's final figure, the figure which prosecutor urged be adopted as the true value of the company's assessable tangible personalty in the taxing district of Newark.

The state board refused to lower the assessment on the grounds that the book cost and depreciation reserve method of ascertaining the true value was improper since the costs used were spread over a period of years; that the state board table of unit values as of 1924 was no indicia of value as of 1934; and that the capitalized earnings method was *extra* the provisions of the statute.

The state board also pointed out the fact that index figures which went to make up the book value were much higher on October 1st, 1934, than when the property was installed; that the expert did not take this into account; that there was no physical valuation of the property; and that there was no estimate of reproduction costs less depreciation and obsolescence, if any. This latter observation prosecutor denies on the ground that the expert did testify that the figures set forth in his first two approaches were all higher than what, in his opinion, the reproduction costs less depreciation and obsolescence, if any, would have been.

It is, of course, well settled that property be assessed for taxation according to its true value. *N. J. Const., art. IV,* § 7, ¶ 12; *Pamph. L.* 1918, *ch.* 236, §§ 202, 948. The difficulty, however, is how to determine true value. The General Taxing act, *supra,* does set forth the form to be filed by the assessor when submitting his assessment list. This form definitely states that the assessor has valued the property at such price as in his judgment the property "would sell for at a fair and *bona fide* sale by private contract * * *." *Pamph. L.* 1918, *ch.* 236, *art.* 5, *p.* 862. *Hurd* v. *Cook, Collector,* 60 *N. J. L.* 70; 36 *Atl. Rep.* 892. *Cf. Trunley* v. *Elizabeth,* 76 *N. J. L.* 42; 68 *Atl. Rep.* 1094. The interpretation generally given to the expression "true value," as used in the constitution and Tax laws, is that the valuation for taxation should be on the price which the assessor believes could be obtained for the property, in money, at a fair sale, as of the first day of October of the year in which the assessment was made, between a willing seller and a willing buyer; that is, one not obliged to sell dealing with one not obliged to buy. *Cf. Delaware, Lackawanna and Western Coal Co.* v. *Borough of Hampton,* 57 *N. J. L. J.* 54, 56. This would seem to indicate that the legislature conceived such a selling price to be the guiding indicia of true value. It is also well settled that there is a presumption that the assessment made by the proper authority is correct. And the burden is on the taxpayer to show that the assessments as made did not indicate the true value. *Estell* v. *Hawkens,* 50 *N. J. L.* 122,

125; 11 *Atl. Rep.* 265; *Central Railroad Company of New Jersey* v. *State Tax Department,* 112 *N. J. L.* 5, 8,; 169 *Atl. Rep.* 499; *certiorari* denied, 293 *U. S.* 568; 79 *L. Ed.* 667. *Cf. Michigan Central Railroad Co.* v. *Powers,* 201 *U. S.* 245. In the light of these principles it should be observed that prosecutor did not consider the selling price of the property, nor was there any showing whatever that the method used by the assessing authorities was erroneous. Indeed, for aught that is shown, it does not appear in what manner the county board made the assessment. In the absence of a contrary showing, it is to be assumed that the provisions of the statute were followed.

We do not find it necessary to express any opinion upon the probative value of any one or all of the prosecutor's theories in arriving at true value.

Analogy, however, may well be drawn from two recent cases involving assessments made by the state tax commissioner under chapter 25, *Pamph. L.* 1919, *p.* 49, known as the Gross Receipts Tax act. In one, *Long Branch* v. *State Board of Taxation,* 13 *N. J. Mis. R.* 734; 180 *Atl. Rep.* 774, the tax commissioner disregarded the valuations made, as required under the act, by the local assessor, and in lieu thereof substituted a scientific, unit capacity basis for valuing the property. The Supreme Court approved that method. On appeal to the Court of Errors and Appeals that holding was reversed (116 *N. J. L.* 506; 184 *Atl. Rep.* 735), upon the affirmance by that court of the case of *West Orange* v. *State Board of Tax Appeals,* 115 *N. J. L.* 396; 180 *Atl. Rep.* 770; *affirmed,* 116 *N. J. L.* 414; 184 *Atl. Rep.* 735, which held that the provisions of the statute and not a substitute theory controlled. So, too, here. The provisions of the constitution and the statute, as to true value, as construed by the courts, should control.

We are, moreover, entirely satisfied that the prosecutor's theories fail to prove that the assessments as made, were not made as required by law, or that as made, they failed to establish the true value of prosecutor's taxable property.

Judgment is affirmed, with costs.