## Department of Taxation and Finance.

IN THE MATTER OF THE APPEALS FILED BY THE CITY OF JERSEY CITY TO INCREASE THE 1943 VALUATION TAX ASSESSMENTS LEVIED ON REAL PROPERTY LOCATED IN SAID CITY, OTHER THAN SECOND CLASS RAILROAD PROPERTY.

Decided September 4, 1945.

WAESCHE, President. In the taxing district of the City of Jersey City for the year 1943 there were 42,963 assessments upon real property.

On or about January 11th, 1943, the assessor of Jersey City filed with the Hudson County Board of Taxation his 1943 complete assessment list and duplicate. This filing of the assessment list and duplicate with the County Board of Taxation is required by law. *N. J. S. A.* 54:4–35.

After an investigation conducted by the Hudson County Board of Taxation, the said Board revised, corrected, and equalized the assessed value of all the real property in the taxing district of Jersey City at its true value, and did everything necessary for the taxation of property in Jersey City equally and at its true value. The law specifically requires the County Board of Taxation to revise, correct, and equalize at true value the assessed value of all the real property within the county. Therefore, the Hudson County Board of Taxation also revised, corrected, and equalized at true value the assessments on real property within all the other taxing districts located in Hudson County: Hoboken, Bayonne, Weehawken, Union City, &c.; and it likewise equalized at true value the assessments as between the several taxing districts located in Hudson County. *N. J. S. A.* 54:4–46; 54:4–47.

314

The City of Jersey City and the County of Hudson certified to the Hudson County Board of Taxation their respective budgets for the year 1943, as required by law. *R. S.* 40:2–11; *N. J. S. A.* 40:2–11. Upon ascertaining the total amount of taxes to be raised, the Hudson County Board of Taxation fixed and adjusted the amount of state school, state, and county taxes to be levied on each taxing district in Hudson County in proportion to the total sum of their respective ratables. This apportionment of taxes among the several taxing districts of the county is a duty the statute imposes upon the County Board of Taxation. *R. S.* 54:4–48; *N. J. S. A.* 54:4–48.

The Hudson County Board of Taxation then computed and determined the tax rate for Jersey City for the year 1943, as it is required by law to do. *N. J. S. A.* 54:4–52.

The Hudson County Board of Taxation certified to the tax collector of Jersey City the 1943 corrected, revised, and completed Jersey City assessment list and duplicate, the 1943 tax rate for Jersey City, and the amount of taxes to be raised by Jersey City during 1943, all of which the said County Board of Taxation is required by law to do. *R. S.* 54:4–55; *N. J. S. A.* 54:4–55; *Duke Power Co.* v. *State Board of Tax Appeals,* 129 *N. J. L.* 449; 30 *Atl. Rep.* (2d) 416; *affirmed,* 131 *N. J. L.* 275; 36 *Atl. Rep.* (2d) 201.

Jersey City did not appeal from the county equalization table although the statute permitted it to appeal. *R. S.* 54:2–37; *N. J. S. A.* 54:2–37. Nor did it appeal from the tax rate, which the statute also permitted it to do. *Park Ridge* v. *Board of Equalization of Taxes,* 86 *N. J. L.* 39; 90 *Atl. Rep.* 1019. Instead, the tax collector of Jersey City collected the 1943 taxes levied on property located in Jersey City at the tax rate fixed by the Hudson County Board of Taxation and on the property valuations as fixed and assessed by said County Board according to law.

The governing body of Jersey City did not authorize an appeal from any particular 1943 valuation assessment levied on any particular parcel of real estate. Instead, it directed that appeals be taken from every valuation assessment which was less than the respective property value as determined by

the city assessor. On May 18th, 1943, the Commissioners of Jersey City adopted the following resolution:

"*Resolved*, that the Director of Revenue and Finance, or his deputy, be and they hereby are authorized and directed to take such appeals from assessments or actions of the Hudson County Board of Taxation, which effected reductions in valuations of real or personal property in the City of Jersey City for the year 1943."

Pursuant to the aforesaid resolution, Jersey City filed 34,431 appeals with the Hudson County Board of Taxation from the 1943 valuation assessments on real estate within the taxing district of Jersey City. By this mass appeal from approximately eighty per cent. of the taxable assessments levied on real property for 1943, Jersey City sought to increase the total ratable value of real property in Jersey City by $95,816,335. An increase of $95,816,335 in Jersey City's ratables, at the tax rate of $5.745 per $100 of assessed valuation, would produce $5,504,648.45 more taxes for local purposes than the Jersey City budget for the year 1943 authorized or required.

All of these 34,431 appeals were dismissed by the Hudson County Board of Taxation upon the ground that Jersey City had no authority to bring such a mass appeal and that, therefore, the County Board of Taxation had no jurisdiction to hear them.

Jersey City filed 39,397 appeals from the 1943 assessments with the former State Board of Tax Appeals, now the Division of Tax Appeals. They include appeals from the 34,431 assessments for 1943 on real property, which were before the Hudson County Board of Taxation on appeal and which were dismissed by that Board because of its finding that it lacked jurisdiction to hear them.

The statute requires the city assessor to ascertain the names of the owners of all real property situated in Jersey City and to determine its full and fair value at such price as, in his judgment, it would sell for at a fair and bona fide sale by private contract on the assessing date. *N. J. S. A.* 54:4–23. The city assessor is also required to file with the County Board of Taxation his complete assessment list and duplicate.

*N. J. S. A.* 54:4–35. The County Board of Taxation is required to meet for the purpose of examining, revising and correcting the assessor's tax list and duplicate. *R. S.* 54:4–46; *N. J. S. A.* 54:4–46.

The statute provides that:

"Each county board of taxation shall secure the taxation of all property in the county at its true value, in order that all property, except such as shall be exempt by law, shall bear its full, equal and just share of taxes." *R. S.* 54:3–13; *N. J. S. A.* 54:3–13.

"The county board may adjourn from time to time in the discharge of its duties, and may, after investigation, revise, correct and equalize the assessed value of all property in the respective taxing districts, increase or decrease the assessed value of any property not truly valued, add to the lists and duplicates any property which has been omitted or overlooked, at its true value, and in general do everything necessary for the taxation of all property in the county equally and at its true value." *R. S.* 54:4–47; *N. J. S. A.* 54:4–47.

In the case of *Merchants and Manufacturers Fire Insurance Co. et al.* v. *Essex County Board of Taxation et al.,* 15 *N. J. Mis. R.* 505; 192 *Atl. Rep.* 450, our Supreme Court said that the "clear purpose" of the statute "is to have the county board review the assessment list and duplicates of the various taxing districts in the county, and 'after investigation, to revise, correct and equalize the assessed value of all property in the respective taxing districts.'" The case of *Long Dock Co.* v. *State Board of Assessors,* 89 *N. J. L.* 108; 97 *Atl. Rep.* 900; *affirmed,* 90 *N. J. L.* 701; 101 *Atl. Rep.* 367, held that the statute requires the County Tax Board to equalize valuations "as between individuals and also taxing districts." In the case of *Middletown Township* v. *Ivins,* 102 *N. J. L.* 36; 130 *Atl. Rep.* 648, the Supreme Court said:

"The duty of the county board * * *, was, 'after investigation * * * to increase or decrease the assessed value of any property not truly valued.' In view of what the county board did by way of investigation, and the fact that there is no complaint that these increased valuations were in excess of the true value of the property, *it cannot be said that the*

*board failed to perform its duty* 'to secure the taxation of all property \* \* \* at its true value, in order that all property, except such as shall be exempt by law, shall bear its full, equal and just share of taxes,' in the manner provided by law. \* \* \*

"*The assessment as originally made by the assessor does not become the assessment upon which the taxes are finally paid until after the county board of taxation has,* under section 507, *revised, corrected, equalized values,* and increased or decreased the assessed value of any property not truly valued, and added property which has been omitted or overlooked, and, in general, until it has done all things necessary for the taxation of all property equally and at its true value.

"After having done all these things, as required by section 507 [*N. J. S. A.* 54:4–48], the county board under the provisions of section 509 [*N. J. S. A.* 54:4–55], 'shall, on or before the 1st day of April in each year, cause the corrected, revised and completed duplicates certified by said board, to be a true record of the taxes assessed, to be delivered to the respective collectors of the various taxing districts in their respective counties, and the said tax list shall remain in the office of said board as a public record.' \* \* \*

"In the present cases the valuation or assessment made originally by the assessor, and returned to the county board of taxation, was not a completed assessment, and did not become such until acted upon by the county board, which does not render a judgment, but acts upon its own information and knowledge, and, after investigation makes the changes necessary in order to perform its duty of seeing that property is taxed equally and at its true value."

In the absence of a contrary showing, it is to be assumed that the provisions of the statute were followed and that the assessments as revised, corrected, and equalized by the Hudson County Board of Taxation were correctly assessed at the true value of the property. *Newton Trust Co.* v. *Atwood,* 77 *N. J. L.* 141; 71 *Atl. Rep.* 110; *New Jersey Bell Telephone Co.* v. *Newark,* 118 *N. J. L.* 490; 193 *Atl. Rep.* 844; *Harborside Warehouse Co., Inc.,* v. *Jersey City,* 128 *N. J. L.* 263; 25 *Atl. Rep.* (2d) 291; *affirmed,* 129 *N. J. L.* 62; 28 *Atl. Rep.* (2d) 91.

The statute permits a taxing district to take an appeal to the Division of Tax Appeals for a review of a county equalization table, but such a review must be completed before June 10th of the tax year for which the property was assessed. *R. S.* 54:2–37; *N. J. S. A.* 54:2–37. Jersey City did not appeal from the equalization of the 1943 assessments on property in Hudson County, and it is now too late for such an appeal to be taken. Not even with the consent of all interested parties could the Division of Tax Appeals review the 1943 Hudson County equalization table because the statute does not permit such a review after June 10th, 1943. *Kenilworth* v. *Board of Equalization of Taxes,* 78 *N. J. L.* 302; 72 *Atl. Rep.* 966. Moreover, "it is the policy of the state that the settlement of tax controversies be effected within a reasonable time so that the assets of the dependent interlocking political divisions of city, county and state, with their financial requirements, shall be finally and harmoniously adjusted." *Montclair* v. *State Board of Tax Appeals,* 127 *N. J. L.* 382, 389; 22 *Atl. Rep.* (2d) 525, 529; *George A. Fuller Co.* v. *Jersey City,* 21 *N. J. Mis. R.* 38; 29 *Atl. Rep.* (2d) 720.

Therefore, since there was a presumption *in limine* that the Hudson County Board of Taxation equalized the 1943 assessed values of property in Jersey City and Hudson County at their true value, and since there is now no right of appeal from the 1943 equalization table, the presumption that the 1943 assessed values of property in Jersey City and Hudson County were equalized at their true value is no longer rebuttable. Hence, such presumption has become a conclusive presumption. Consequently, there cannot now be a review of this question.

There is also a presumption that the Hudson County Board of Taxation properly fixed and determined the 1943 tax rate for Jersey City, and that it properly fixed and adjusted the amount of state school, state and county taxes to be raised during 1943 by each taxing district in Hudson County. The time when a review of these matters could have been had is long past. The presumption that they were correctly and properly decided is now irrebuttable, and, therefore, these decisions of the County Board also are conclusive.

*Corpus Juris Secundum* states the principle of law applicable as follows: "Official acts or duties are, in the absence of evidence to the contrary, presumed to have been properly performed; and, as a general rule, it is presumed that a public official discharges his duty or performs an act required by law in accordance with the law and the authority conferred upon him, and that he acts fairly, impartially, and in good faith." 31 *C. J. S., Evidence,* 799, § 146; *Newton Trust Co.* v. *Atwood; New Jersey Bell Telephone Co.* v. *Newark; Harborside Warehouse Co.* v. *Jersey City, supra.*

Therefore, we now have the following adjudications, made pursuant to law by the Hudson County Board of Taxation, which are not now subject to review: (a) the assessments on real estate in Jersey City for the year 1943 were equalized at true value; (b) the assessments on real estate for the year 1943 were equalized at true value in each of the other taxing districts of Hudson County; (c) the amount of taxes to be raised during 1943 for state school, state and county by Jersey City and the other taxing districts in Hudson County were properly apportioned among those respective taxing districts; (d) the 1943 tax rate for Jersey City and for each of the other respective taxing districts in Hudson County was properly determined and certified to the proper tax collectors.

Since the foregoing adjudications of the Hudson County Board of Taxation are now conclusively presumed to be correct and just, and since they cannot now be attacked directly, they cannot be attacked collaterally. *Freeholders of Ocean* v. *Township of Lacey,* 42 *N. J. L.* 536.

The statute provides that "A taxing district which may *feel discriminated against* by the assessed valuation of property in the taxing district, or by the assessed valuation of property in another taxing district in the county" may appeal to the County Board of Taxation. *R. S.* 54:3–21. In order for a taxing district to have the right of appeal to the County Board of Taxation under this section of the statute, it must show that it *feels discriminated against* by reason of the valuation assessments. In order for Jersey City to show a feeling that it has been discriminated against by reason of the 1943 valuation assessments on property in Jersey City, it must

appear from its 34,431 appeals on real property filed with the County Board of Taxation that the assessments on real property in Jersey City may have resulted in an unjust, inequitable, or unfair burden of taxes being placed upon most of the taxable real property in Jersey City by the levy of relatively lower assessments on a few other parcels within the district. But such does not appear from the appeals. Jersey City is asking for an *increase* of the valuation assessments on about eighty per cent. of the taxable real property in Jersey City. An increase of the assessments will result in an increase of taxes. Moreover, Jersey City does not claim that it feels discriminated against. Its 1943 appeals are based only on the claim that approximately eighty per cent. of the 1943 assessments on real property in Jersey City are below the true value of the property. The resolution adopted by the Commissioners of Jersey City authorizes appeals from assessments "which effected reductions in valuations of real or personal property in the City of Jersey City for the year 1943." The corporation counsel for Jersey City said in his brief filed with the Division of Tax Appeals in the 1943 appeals of Jersey City to increase the assessments on the properties of Louis F. Bettcher, Katherine Ryer, James X. Warren and Antoinette Lauria:

"The Hudson County Board of Taxation, in its revising capacity for the year 1943, deducted from the valuations on real estate as made by Jersey City's assessor, the sum of $95,816,335, representing some 34,431 separate reductions. To review these reductions the city filed appeals."

Appeals which are filed merely on the ground that the assessments were reduced by the County Board, or that they were below the true value of the property assessed do not present any legal right for an appeal under section 54:3–21 of the Revised Statutes. Such grounds do not necessarily mean that Jersey City feels discriminated against. Since we must assume that the 1943 assessments on real property throughout Jersey City were equalized at true value, and since, therefore, each parcel of real property bore only its full, equal and just share of taxes for the year 1943, it would be only sham and folderol for Jersey City to contend that

the taxes on eighty per cent. of the ratables in the taxing district should be substantially increased—not reduced—on the ground that the taxing district was discriminated against. Therefore, Jersey City had no legal right to take a mass appeal from eighty per cent. of the assessments on real property, and consequently the Hudson County Board of Taxation had no jurisdiction to consider those appeals.

Our courts have recognized that when assessments are equalized at true value within a taxing district except for a relatively few parcels of real estate, which have been assessed below their true value, an unfair tax burden would be imposed upon the balance of the taxing district, and that the taxing district, therefore, would be discriminated against in favor of a relatively few property owners. In such cases the courts have acknowledged the statutory right of the taxing district to file an appeal for the purpose of having the assessments on those relatively few parcels increased to the true value of the property. But the courts have never held that a taxing district in which assessments have been equalized at true value could appeal eighty per cent. of the assessments on real property on the ground that the said taxing district was discriminated against because said assessments are less than true value. That, in itself, does not constitute discrimination. The purpose of section 54:3–21 of the Revised Statutes (*N. J. S. A.*) in permitting a taxing district to appeal from assessments on separate parcels of real estate whenever it "may feel discriminated against" is to facilitate the correction of relatively few errors in assessments within the taxing district. The Court of Errors and Appeals in dealing with a similar taxing situation expressed itself as follows:

"In short, the design of the section, as we view it, is not so much to work a general reformation of tax valuations in a given district as to correct specific instances of error or abuse in the direction of undervaluation." *Jersey City* v. *Board of Equalization of Taxes,* 74 *N. J. L.* 753, 759; 67 *Atl. Rep.* 38, 41.

Statutes ought not to be given a meaning that may lead to absurd, unjust or contradictory results. *Jensen* v. *Woolworth Co.,* 92 *N. J. L.* 529, 534; 106 *Atl. Rep.* 808; *Donohue*

v. *Campbell,* 98 *N. J. L.* 755, 759, 763; 121 *Atl. Rep.* 700. If the assessments on real property in Jersey City for 1943 should be increased $95,816,335, Jersey City would receive $5,504,645.45 additional taxes for 1943, none of which taxes were authorized by Jersey City's 1943 budget, and for which there is no public need. All of such additional taxes could only be surplus taxes for 1943, even though they were not provided for in the budget, not levied, and not needed, and although they would not be collected until two or three years after 1943. This is an absurd situation on its face. There is no justification for it whatsoever. It would be the taking of private property without compensation; it would be confiscation, not taxation. In the case of *State, Baldwin, Pros.,* v. *Fuller,* 39 *N. J. L.* 576; *affirmed,* 40 *Id.* 615, the court said:

"The theory of taxation is that it is levied for public purposes; that it is an attribute essential to the existence of government, without which it would be powerless to discharge its functions, and for that reason it is held to be inherent. *It is the public use for it which marks it as a tax.* Where no public end is subserved, the power cannot be called into action."

At another point in the opinion the court said:

"* * * that legitimate taxation is limited to the imposing of burdens, like those in question, so far as they are for the public benefit, upon the persons or property within the political district possessing powers of local government, so that the exactions are distributed over the entire territory, upon the rule of uniformity. If the constitutional guarantee is not so interpreted as to enforce this rule, the legislature may, under the guise of taxation, appropriate private property to any extent to public use, without compensation."

In the case of *Taylor* v. *Smith,* 50 *N. J. L.* 101, 106; 11 *Atl. Rep.* 321, 322, the Supreme Court said:

"But to justify any imposition of tax upon persons or property the purpose to be effected must be a public one.
* * *

"Nothing has been better settled in this state than that the legislature has no authority to delegate the power of general

taxation over persons or property, except to political divisions or corporations of the state, and that for the sole purpose of enabling them to exercise the powers of government conferred on them within their locality."

The law requires every municipality to adopt a budget for each fiscal year. *R. S.* 40:2–5; *N. J. S. A.* 40:2–5. Upon adoption, the budget constitutes "an authorization of the amount to be raised by taxation for the purposes" of the municipality. *R. S.* 40:2–11, 40:2–19; *N. J. S. A.* 40:2–11, 40:2–19. The 1943 budget of Jersey City does not "authorize" these additional taxes to be raised, and the statutes provides that:

"Except as may be otherwise provided in section 40:2–31 of this title, no officer, board, body or commission shall, during any fiscal year, expend any money (except to pay notes, bonds, or interest thereon), incur any liability, or enter into any contract which by its terms involves the expenditure of money;

"a. For any purpose for which no appropriation is provided in the budget or by temporary appropriation pursuant to section 40:2–12 of this title, or

"b. In excess of the amount appropriated for any such purpose." *R. S.* 40:2–29; *N. J. S. A.* 40:2–29.

Therefore, to grant these appeals would not only be absurd and unjust, but would be contradictory to these other laws designed to regulate and control municipal governments, and paradoxically would render these very laws, which are intended to protect the taxpayers, "illegal" and nugatory. The statutes authorizing municipalities to budget and appropriate money for public use, and the statutes authorizing municipalities to raise money by taxation for public use pertain to the same purpose, to wit, the financing of municipal governments. The function of tax collectors is merely to translate municipal budgets into cash in order to obtain municipal revenue. The rule of statutory construction is fundamental that where there are different statutes relating to the same subject-matter the whole must be considered as constituting one system and mutually connected one with another. *In re Book's Will*, 90 *N. J. Eq.* 549, 553; 107 *Atl. Rep.* 435;

*West Shore Railroad Co.* v. *State Board of Taxes,* 92 *N. J. L.* 332, 335; 104 *Atl. Rep.* 335; *Commercial Trust Company of New Jersey* v. *Adelung,* 136 *N. J. Eq.* 37, 45; 40 *Atl. Rep.* (*2d*) 214. Statutes ought to be so construed that, if possible, no clause, sentence or word shall be superfluous, void or insignificant. *Steel* v. *Freeholders of Passaic,* 89 *N. J. L.* 609; 99 *Atl. Rep.* 318.

"A municipal corporation is the creature of the legislature, and possesses only such rights and powers (a) as have been granted in express terms; (b) as arise by necessary or fair implication, or are incident to the powers expressly conferred, and (c) as are essential to the declared objects and purposes of the municipality—not merely convenient, but indispensable. * * * Any reasonable or fair doubt of the existence of the asserted power, or any ambiguity in the statute whence it springs, or those *in pari materia,* is to be resolved against the municipality, and the power is denied. Municipalities are to be confined within the limits that a strict construction of the grants of powers will assign to them." *N. J. Good Humor, Inc.,* v. *Bradley Beach,* 124 *N. J. L.* 162, 164; 11 *Atl. Rep.* (*2d*) 113, 115. In the case of *Englewood* v. *Hopper,* 54 *N. J. L.* 544; 23 *Atl. Rep.* 948, the Supreme Court held that any power to increase valuations of property for the purposes of taxation was a statutory power which must be exercised in strict compliance with the statute conferring jurisdiction. In the case of *Newark Aqueduct Board* v. *Newark,* 50 *N. J. L.* 126; 10 *Atl. Rep.* 881, the Supreme Court held that the authority to levy a tax should be clearly expressed and not left to inference.

As previously stated, by act of the legislature, every municipality is required to adopt a budget for each fiscal year. *R. S.* 40:2–5; *N. J. S. A.* 40:2–5. The "local budget law" requires each muuicipal budget to expressly state therein the "amount to be raised by taxes" for the municipality. *R. S.* 40:2–13, 40:2–15; *N. J. S. A.* 40:2–13, 40:2–15. The legislature has provided that, upon adoption, the municipal budget shall constitute an "authorization of the amount to be raised by taxation" for the purposes of the municipality adopting the budget. *R. S.* 40:2–11; *N. J. S. A.* 40:2–11.

The legislature itself expressly authorizes the amount of revenue to be raised each year by taxation for each municipality, to wit, that amount which each municipal budget provides as the "amount to be raised by taxes." *R. S.* 40:2–19; *N. J. S. A.* 40:2–19. This statute reads as follows:

"The amount to be raised by taxes, as stated in the budget, shall be the amount to be raised by taxation for local purposes, * * * in the case of a municipality * * *. The governing body of each county and municipality shall have power to assess, levy and collect taxes in support of any budget adopted pursuant to this chapter and for all other lawful purposes." *R. S.* 40:2–19; *N. J. S. A.* 40:2–19.

The legislature also has provided the mechanics for assessing and collecting the taxes which it authorizes shall be levied and raised for a municipality. The process includes the judicial determination of the true value of the property to be taxed, and the ministerial duty of computing the tax rate. The total value of the ratables of a municipality for a particular year, multiplied by its tax rate for that year (assuming that the tax rate is properly computed) will equal the amount authorized by the legislature to be raised by taxes for that municipality. If the total value of the ratables of a municipality in any year are increased after its tax rate is fixed and determined for that year, the amount of taxes that actually will be raised for such year as a direct result of such increased value in the ratables, provided all the taxes assessed are collected, will exceed the amount required by the municipal budget to be raised by taxation, and will, therefore, exceed the amount authorized by the legislature to be raised by taxation for that municipality. Since the increased amount which actually will be raised by taxes is not authorized by the legislature, their levy, to the extent of such increase, is illegal. In the case of *Township of Bernards* v. *Allen,* 61 *N. J. L.* 228, 237, 238, 239; 39 *Atl. Rep.* 716, the Court of Errors and Appeals said:

"Except as the legislature of the state may confer upon political divisions powers to legislate and to provide revenue for defraying the expenses of the local governments, it has no power to delegate the power of taxation to ministerial

officers or to another department of the government. *Cooley Tax.*, *p.* 47; 25 *Am. & Eng. Ency. L., pp.* 79, 186. It may provide for the appointment of officers and other persons to assess and collect taxes, but the essential power of taxation, which is the power to levy a tax, is incapable of being delegated by the legislature.

"Every system of taxation consists of two parts—one the levying of taxes, the imposition of taxes on persons or property, the other the assessment and collection of taxes. The first is a legislative function controlled by constitutional prescriptions; the other, the assessment and collection of taxes, is mere machinery by which the legislative purpose is effectuated. Whether taxes shall be assessed and collected by officers elected by the people, called assessors and collectors, or by officers holding office under some other authority, is left to legislative discretion. *Trustees of Public Schools* v. *Trenton*, 30 *N. J. Eq.* 667, 678; 3 *Stew. Eq.* 667, 678. 'The legislature must prescribe the rule under which taxation shall be laid, and originate the authority under which taxing officers assess and collect the taxes; it need not prescribe all the details or fix with precision the sum to be raised. If the rule is prescribed which, in its administration, works out the result, that is sufficient; *but to refer the making of the rule to another authority would be in excess of legislative power.* To leave to a state officer or board the power to determine whether a tax should be laid for the current year, or at what rate, or upon what property, prescribes no rule and originates no authority; it merely attempts to empower some other tribunal to prescribe a rule and set in motion the tax machinery. This is clearly incompetent.' *Cooley Tax., p.* 50.

"The legislature, having prescribed a rule of taxation, may entrust the assessment and collection of taxes, in conformity with prescribed rules, to officers appointed by other authority."
*     *     *     *     *     *     *
"But the essential power of taxation, the power to levy a tax, cannot be delegated by the legislature."

In the case of *Jersey City* v. *Martin*, 126 *N. J. L.* 353, 360; 19 *Atl. Rep.* (2d) 40, 45, the Court of Errors and Appeals said:

" 'All taxes, whether levied for state, county, or municipal purposes, are state taxes; they can be imposed by no other authority than that of the state. The state appropriates the proceeds to what purpose it sees fit; but, however the proceeds may be appropriated, every tax is a state tax.' "

The power to increase the total value of the ratables of a municipality for any year, after its tax rate has been fixed and determined for that particular year, would be the equivalent of the legislative power to levy an additional tax for that year. Neither the municipalities, the County Boards of Taxation, nor the Division of Tax Appeals possess the power to levy a tax, or, which is the same thing, to increase the amount specified in the municipal budget to be raised by taxation. In fact, neither the County Boards of Taxation nor the Division of Tax Appeals possess any legislative powers whatever—only judicial and administrative or ministerial powers.

The appeals from the decision of the Hudson County Board of Taxation, filed by Jersey City to increase the 1943 tax assessments levied on real estate should be dismissed for lack of authority in the city to file said appeals, and also for lack of jurisdiction in the Hudson County Board of Taxation to consider said appeals. Since the County Board had no jurisdiction to increase the assessments mentioned in the appeals, we have none.