State v. Betts.

THE STATE (The Morris Canal and Banking Co., prosecutors), v. CHARLES N. BETTS, COLLECTOR OF JERSEY CITY.

1. That part of the Morris Canal which was constructed under the supplement of 1828, from the Passaic to the Hudson, is exempt from taxation; this exemption was one of the *privileges* conferred by the original charter, and these are conferred on the extension by the supplement.

2. The piers and basins at Jersey City belonging to the Morris Canal Company, when not rented out and actually used for the purpose of accommodating the boats engaged in the canal navigation, and for the reception of their cargoes, being property occupied and held by the company for the actual purposes of canal navigation, are exempt from taxation.

This was a *certiorari* directed to the collector of Jersey City, to bring up a tax assessed upon the piers and basin of the Morris Canal Company, at Jersey City. The questions raised were two—first, was the extension of the canal from Newark to Jersey City exempt from taxation? and, secondly, whether that exemption extended to piers and basins which were kept at the terminus of the route, for the accommodation of the boats and cargoes navigating the canal?

State v. Betts.

Argued before the CHIEF JUSTICE and Justice POTTS.

Mr. *Frelinghuysen* and Mr. *Scudder* for plaintiff.

Mr. *Zabriskie* for the defendant.

Justice POTTS delivered the opinion of the court.

POTTS, J.  .The *certiorari* in this case brings up an assessment of taxes in Jersey City, made in 1851, upon certain lots of land owned by the Morris Canal and Banking Company, to wit: sixteen lots in block No. 1, and thirteen lots in block No. 14, constituting the *pier* of said company; and ten lots in block No. 2, which are flowed by the tide waters of the Hudson, and constitute part of the company.'s *basin*.

The 14th section of the company's charter, 1 *Har. Comp.* 94, enacts, "that no state, county, township or other public assessments, taxes or charges whatsoever, shall at any time be laid or imposed upon the company, or upon the stocks or estates which may become vested in them under this act; but this exemption shall not extend to any other estate or property of the company than such as is possessed, occupied and used by the said company for the *actual* and *necessary purposes* of canal navigation under this act, according to the true intent and meaning thereof." This act authorized the company to construct a canal' from the Delaware to the tide waters of the Passaic only. By a supplement passed in 1828, 1 *Har. Comp.* 161, they were authorized to " continue the canal to the waters of the Hudson, *at or near* the city of Jersey," and all the " rights, powers and *privileges* " given and granted by the original act were conferred on them for this purpose, " in the same manner and to the same effect as if the said company had been originally authorized by said · act," to construct their canal to the Hudson, &c.

Two questions, in their nature preliminary, have been made by the defendant in *certiorari*.

1. The first is, whether, it not appearing that an application was first made in this case to the Commissioners of Ap-

peal to correct this assessment, this court will entertain this *certiorari*. As to this, it was held in the case of *The State* v. *Bentley*, 3 *Zab.* 543, that where legal questions of importance arise, this court will exercise the discretion of looking into the case upon *certiorari* as well before as after an appeal.

2. The second question made is, whether by the provisions of the supplement of 1828, the portion of the company's works authorized by that supplement is exempted from taxation. The supplement authorizing the extension of the canal, confers on the company the same *privileges* granted to it in and by the original charter. The term " privilege " includes in its ordinary definition an exemption from such burthens as others are subjected to, as the privilege of being exempt from arrest, or from taxation. The legislature manifestly intended by the language of the supplement to grant to the company the same exemption they would have enjoyed if the authority to continue the canal to the Hudson had been embraced in the original act, and in the same terms.

Then, are the lots assessed within the exemption? The second section of the supplement provides that " if the canal shall be made or constructed through, upon or along any street or streets in the town of Newark or Jersey City, or either of them, in such case the land occupied by the said canal and for its towing path, shall not exceed a space of thirty-two feet. So far as any land in Jersey City, not exceeding this width is occupied by the canal, there can be no question as to its exemption from taxation. But I understand that the whole or the principal part of the land assessed in this case, lies without the limits referred to in this second section, that is to say, this pier and basin were not constructed through, upon or along any street or streets in Jersey City; that what is called the basin is in fact in the waters of the Hudson, and the pier lots consist of land reclaimed from the river by the company. The only question, therefore, is whether this part of the company's works is, in the language of the charter, " used by the said company for the actual

and necessary purposes of the said canal navigation, according to the true intent and meaning thereof?"

This inquiry is limited, of course, to the state of things as we find them in 1851, the time when the assessment was made. The evidence is, that this pier was used at that time for storing coal and other articles to be sent up the canal; for leashing canal boats to, and for canal purposes generally, and was indispensably necessary for such purposes. The boatmen on the canal used the pier free from charge, under the direction and control of the company, the same as they used any part of the canal. If coal or other freight was consigned to Jersey City, they landed it there. Spencer & Co. occupied one-third of the pier as a coal depot, paying no rent; their coal came through the canal; the other part was occupied indiscriminately by all persons bringing freight through the canal; some part was used for storing lumber that didn't come by way of the canal, &c. The company received compensation by the ton for property not destined for the canal, but the business of the canal always had the prior right to the pier. The basin is some two hundred and fifty feet wide, and was used by the canal boats, under the regulations of the company and without charge. Sometimes boats not navigating the canal used it and paid a compensation, but the canal boats had the prior right.

I think this evidence clearly establishes the proposition that the pier and basin are appendages to the canal, used for the actual and necessary purposes of the canal navigation, within the meaning of the charter. They are situated at the point where the canal debouches in the Hudson river at its terminus. The canal is a public highway, used by the public for the purposes of commerce, subject to the payment of tolls and the regulations of the company. The work would be incomplete if it had not annexed to it the necessary conveniences to accommodate the business it is designed for. Every boat that loads or unloads at the terminus, must have the conveniences of a temporary harbor and a public wharf, for it would be unreasonable to suppose that every trader on a public line of inland transportation can provide

State v. Betts.

these accommodations for himself. The piers and basins of a canal company are, like the depots and car houses of a railroad company, not merely convenient, but *necessary* appendages. The *use* and the *necessity* are proved.

It is of no importance that boats not navigating the canal, and merchandize not transported on it, occasionally, when the pier and basin were not otherwise occupied, were permitted to use them, and that a compensation for such use was charged. The actual purpose for which these works were constructed, the use to which they are primarily dedicated, and the necessity that exists for them, furnish the tests by which this question must be governed. If the company should erect basins and wharves or piers for purposes not necessary to, nor intended for, the purposes of the canal navigation—if they have erected or should erect stores or storehouses for the purpose of renting them out, and increasing their profits by deriving an income from these sources, it would present for consideration a question not now before us—and when the question whether property of this description, and appropriated to such purposes, is within the exemption comes up, it will be time enough for this court to consider it.

There is no force in the objection, that by the language of the supplement the company are only empowered to construct their canal so as to connect with the waters of the Hudson at or near Jersey City, and that these works are constructed *in* the river. It would be extremely stringent to say that the waters of the Hudson, at or near Jersey City, meant the line of high or low water mark.

Let the assessment be set aside.

CHIEF JUSTICE and ELMER, J., concurred.

CITED *in* Mor. Can. & Bkg. Co. v. Jersey City, 1 Beas. 227; State v. Haight, 6 Vr. 183; State v. Love, 8 Vr. 61.