DIVISION OF TAX APPEALS.

LESLIE H. JAMOUNEAU v. CITY OF NEWARK.

Decided June 10, 1947.

For the petitioner, *Saul A. Wittes.*

For the City of Newark, *Vincent J. Casale.*

For the C-O Two Fire Equipment Co., *Pitney, Hardin, Ward & Brennan* (by *John R. Hardin, Jr.*).

CONKLIN, COMMISSIONER. Leslie H. Jamouneau, alleging that he is an aggrieved taxpayer of the City of Newark, filed a petition claiming that Block 5088, Lot 138, consisting of 8.58 acres, together with buildings erected thereon, is in the possession of the C-O Two Fire Equipment Company and is used by it under a lease from the City of Newark, owner of the fee of the premises, under such circumstances as to render the said C-O Two Fire Equipment Company legally liable to assessment as owner for the year 1943 of the said premises.

Under date of August 13th, 1941, the City of Newark entered into an agreement of lease with the C-O Two Fire Equipment Company by which it leased unto them a plot of meadow land near State Highway 25 and Haynes Avenue in the City of Newark. This lease commenced October 1st, 1941, and was for a term of fifty years. (Recorded in Book A-99 of Deeds, pages 328-337 in the register's office of the County of Essex.) The annual rental is $5,000, and the city covenants to satisfy any taxes or assessments which may become a lien upon the said land or premises or be charged against the tenant by reason of its interest in said lands and premises or any building or improvements thereon. Should the city decide to sell the leased land, then the C-O Two Fire Equipment Company has a prior option under the lease to purchase the property at the established price of $10,000 an acre, regardless of any other offer made. The city further agreed that this lease contain a renewal clause, that the city should open and pave a street, put in fill on the land, and assist in having a railway spur installed. By its terms the C-O Two Fire Equipment Company agreed to erect a factory building, which became the property of the city and part of the demised premises. In case of condemnation through eminent domain, the C-O Two Fire Equipment Company would be entitled, if that contingency occurred, to a part of the award made for the improvements. The lease further provided that the interest of the company is subject to mortgage.

This matter was appealed to the Essex County Board of Taxation, which board held that it did not have jurisdiction of the matter in controversy. In the hearing before this Division a certified copy of the lease was offered as evidence and received. There is no dispute that the land is assessed at $42,900 and the building at $250,000 but carried on the tax books of the City of Newark as exempt. The C-O Two Fire Equipment Company carried a book value on the building of $482,540.24.

This action was brought by the taxpayer under the provisions of R. S. 54:3–21; N. J. S. A. 54:3–21, wherein feeling that he was discriminated against by the assessed valuation of other property in the county or taxing district he appealed

to the Essex County Board by filing a petition of appeal with the County Board, which appeal was dismissed, and under the provisions of *R. S.* 54:2–39; *N. J. S. A.* 54:2–39, being dissatisfied with the judgment of the County Board, he appealed to this Division.

The authority of the City of Newark to enter into an agreement of lease is given under *R. S.* 40:176–11; *N. J. S. A.* 40:176–11, which provides:

"Every city of the first class of this state may lease to any person or persons any land or building of the municipality not needed for public use for a fixed term not exceeding fifty (50) years."

And if the authority of the City of Newark is not found under that section, then the city claims the authorization as given by *R. S.* 40:179–34; *N. J. S. A.* 40:179–34, which provides:

"Any city fronting upon the navigable waters of this state is hereby authorized to establish docks, warehouses, ferries, terminals and shipping and industrial facilities in such city and upon adjoining lands under water, and to construct, establish, equip, maintain and operate or to lease to lessees for a term of years, in whole or in part, such docks, warehouses, ferries, terminals and shipping and industrial facilities, including piers, bulkheads, slips, basins, industrial buildings, equipment, railroads and other structures and improvements (all the foregoing together with the lands and lands under water upon which the same may be located, being hereinafter collectively referred to as an 'industrial terminal'), and for that purpose to use any available lands owned by such city and to acquire such other lands and rights in lands, including lands now or formerly under water, as may be necessary for the purpose. Such city shall have power to acquire in fee simple all the lands, lands under water and all other property, easements, rights and appurtenances by purchase, condemnation or grant, and to enter into such contract or contracts with the board of commerce and navigation, or other board or department of this state and with other municipalities, persons, and corporations for the use of any lands, lands under water or rights therein and for the erection, construc-

tion and equipment of such industrial terminal and the appurtenances thereof as may be necessary to carry out the purposes of this act."

And the authority to enter into a lease for the property is provided in *R. S.* 40:179–35; *N. J. S. A.* 40:179–35:

"The governing body of any city where such industrial terminal may be established shall have the power to operate and maintain such terminal or to lease for a term not exceeding fifty years the whole or any part thereof, or the lands, lands under water and rights therein, upon which such terminal is proposed to be established under an agreement or agreements for the construction, erection, and equipment thereof by the lessee or lessees upon such terms and conditions as may be determined by such governing body. Every such agreement shall provide that all interest upon bonds to be issued as hereinafter provided and the principal amount of all serial bonds as they severally mature during the term of any lease made as provided herein shall be paid by the lessee to the city at least fifteen days prior to the day on which said principal or interest may become due."

It is not within the province of this Division, a *quasi*-judicial body, to determine the constitutionality of any act of the legislature, for it has been held in the decisions of this Division in the case of *City of Newark* v. *Mutual Benefit Life Insurance Co.,* 1934-1939 *New Jersey Tax Reports,* 440, President Weaver said:

"As this board is a *quasi*-judicial body, it has no power to pass upon constitutional questions of law, but must interpret the statutes as they are written."

And later in the Supreme Court case of *Schwartz* v. *Essex County Board of Taxation,* 129 *N. J. L.* 129; 28 *Atl. Rep.* (2d) 482, 484, Mr. Justice Colie, speaking for the court said:

"It is indisputable that the determination of the constitutionality of an act of the legislature rests with a judicial body; not with a *quasi*-judicial body such as the State Board of Tax Appeals. The final responsibility to pass upon the constitutionality of a given piece of legislation rests in the courts and it is the duty of the various state agencies and administrative bodies to accept a legislative act as constitu-

tional until such time as it has been declared to be unconstitutional by a qualified judicial body."

The Division of Tax Appeals of the Department of Taxation and Finance is not such a qualified judicial body as to pass upon the constitutionality of an act of the legislature.

It was the argument and contention of the petitioner that even admitting the constitutionality of the act, the lease was fraudulent and was entered into for the purpose of evading taxation by the C-O Two Fire Equipment Company and that the lease was in reality a deed of conveyance.

For this Division to make such a finding would be tantamount to declaring that this Division by its judgment has the power to order a reformation of the lease. This power we do not have, and should be the proper subject-matter of a writ of *certiorari* in the Supreme Court. Such is the remedy that was available to the petitioner and the authority for such a procedure is clearly set forth in the case of *Shea* v. *Ellenstein et al.*, 118 *N. J. L.* 438; 193 *Atl. Rep.* 551.

By its action the Essex County Board of Taxation dismissed the petition of appeal on the grounds that it did not have jurisdiction. This Division does not concur with said County Board for the reason that under *R. S.* 54:3-21; *N. J. S. A.* 54:3-21, any taxpayer feeling that he is discriminated against may appeal to the County Board and under *R. S.* 54:2-39; *N. J. S. A.* 54:2-39 to this Division. If we found that the County Board in its dismissal for lack of jurisdiction had made a proper disposition of the case, then we would not have attempted to determine the matter before us on its merits. But the Division of Tax Appeals has the authority to determine if dismissal by the County Board for lack of jurisdiction was proper (see *Borough of Oradell* v. *State Board of Tax Appeals*, 125 *N. J. L.* 37; 13 *Atl. Rep.* (*2d*) 479.

From the proofs presently before us it appears that this property should be excluded from taxation, or under the provisions of *R. S.* 54:4-3.3; *N. J. S. A.* 54:4-3.3, exempted from taxation.

Judgment has been entered in accordance with the foregoing conclusions.

WAESCHE, PRESIDENT. (Dissenting.) The City of Newark is the owner in fee-simple, free and clear of all liens and encumbrances, of eight and fifty-eight hundredths (8.58) acres of industrial land located in the city. On August 13th, 1941, the city leased this industrial acreage, which was then vacant and unimproved land, for a term of fifty (50) years to the C-O Two Fire Equipment Company, a private manufacturing corporation of the State of Delaware. In consideration for the said letting, the C-O Two Fire Equipment Company agreed to pay the city a fixed yearly rent of five thousand dollars ($5,000) for the term of the lease. And said corporation further agreed, as part consideration for the lease, to erect and build on the demised land, at its own cost and expense, a factory building containing at least 65,000 square feet. By the terms of the lease, any building or buildings erected by the said corporation on the land described in the lease became the property of the city and a part of the land and premises demised by the lease.

Pursuant to the said lease, and prior to November 10th, 1942, the C-O Two Fire Equipment Company erected on the land described in the lease a factory building or buildings.

The land described in the aforesaid lease and the buildings erected thereon by the aforesaid corporation are the properties involved in this appeal.

The 1943 tax duplicate of the City of Newark shows that the 1943 assessed value of both the land and the buildings is $292,900, being $42,900 for the land, and $250,000 for the buildings. However, both the land and the buildings appear on the said tax duplicate as exempt from taxation. This appeal is to have this property, land and buildings, made subject to taxation at its true value.

The lease gives the C-O Two Fire Equipment Company an option to purchase the demised premises *at any time during the term of the lease* at the price of $10,000 per acre, or $85,800. As stated above, the assessed value of the land and buildings for the year 1943 is $292,900. It is therefore apparent that the purchase price of $10,000 per acre is intended to represent only the value of the land. The purchase price agreed upon in the lease could not include the value

of any buildings because when the lease was made and the purchase price was fixed no buildings had as yet been erected.

Furthermore, the C-O Two Fire Equipment Company carries on its corporate books the buildings it erected on the land described in the lease *as fixed assets of the corporation.* It valued those buildings as of October 1st, 1942, at $417,934.48.

The lease provides that if the property described in the lease is taken by condemnation or eminent domain the city will receive only the award for the *value of the land,* and the C-O Two Fire Equipment Company will receive the award *for the value of the buildings.* The lease also provides that the city itself will not, during the term of the lease, condemn and take any part of the leased premises. Since the city "warrants and represents that it is the owner in fee-simple of the land," the only premises the parties could have contemplated that the city would condemn would be the buildings.

The tax rate for the City of Newark for the year 1943 was $5.31 per $100 of valuation. As pointed out above, the 1943 assessed value of the buildings was $250,000, and their book value, as of October 1st, 1942, was $417,934.48. The 1943 assessed value of the land was $42,900, and its agreed upon purchase price was $85,800. Therefore, if the property were subject to taxation, the taxes for the year 1943 on the assessed value of the land and buildings would have been $15,552.99, but, if the true value of the property for the year 1943 was $503,734, then the 1943 taxes should have been $26,748.28. Therefore, by leasing the property from the city at $5,000 a year, the corporation saves in taxes from $10,000 to $20,000 a year. Certainly this advantage is a flagrant violation of the principle of equality in matters of taxation. Equal right to the use of land requires equal taxation.

It is apparent that the corporation was to enjoy many of the aspects of ownership without the obligation of paying taxes. It seems that it was the intention of the city and the corporation that the buildings were to belong to the city only when they were to be taxed, but for all other purposes they were to belong to the corporation. The question is whether such an attempt to evade the payment of taxes is legal. I do not think so, and apparently the parties to the

lease do not think so, because the lease provides that if any taxes are assessed against the land or buildings or any interest therein the city will pay them.

The property involved in this appeal is occupied by a private corporation and used exclusively by it in a strictly private business enterprise. By the very terms of the lease the possession of the property is given to the C-O Two Fire Equipment Company with the right to use the demised premises in connection with its private business including "the handling, treating, manufacturing, remanufacturing, fabricating, storing, warehousing, and selling of goods, wares and merchandise of all kinds whatsoever as will not as such business is conducted by the Tenant give off deleterious or offensive odors, or constitute a public nuisance."

The statute, *R. S.* 54:4–3.3; *N. J. S. A.* 54:4–3.3, exempts from taxation property owned by a taxing district only when "used for public purposes." In the case of *Essex County Park Commission* v. *State Board of Tax Appeals*, 129 *N. J. L.* 336; 29 *Atl. Rep.* (2d) 739, 740, our Supreme Court said that, under the above statute, the test which determines the taxability of property owned by a taxing district is "the use to which the property is put." The property of a taxing district is taxable, the court held, "unless devoted to that public use which the statute recognizes as a basis for exemption. * * * classification for exemption based on use is consistent, meritorious as a matter of fair and just distinction and, in our judgment, valid." By limiting the exemption from taxation of property owned by a taxing district to that which is "used for public purposes," the statute contains a clear expression of legislative purpose to tax city owned property which is occupied by a private corporation and used exclusively by it for private business purposes. *Jersey City* v. *Blum*, 101 *N. J. L.* 93, 96; 127 *Atl. Rep.* 214.

For the above reasons, I do not think the property is exempt from taxation. The question of the true value of the property did not come up for consideration.