24 N.J. Super. 252 (1952)
93 A.2d 800
BALDWIN CONSTRUCTION CO., A CORPORATION OF NEW JERSEY, ET ALS., PLAINTIFFS,
v.
ESSEX COUNTY BOARD OF TAXATION AND CITY OF EAST ORANGE, A MUNICIPAL CORPORATION, DEFENDANTS. 544 CENTRAL AVENUE CORP., A CORPORATION, SOCIETY OF THE DIVINE SAVIOR, A CORPORATION, AND EARL E. EBY, PLAINTIFFS,
v.
ESSEX COUNTY BOARD OF TAXATION AND CITY OF EAST ORANGE, A MUNICIPAL CORPORATION, DEFENDANTS. MEDICAL BUILDING CORPORATION AND MUIREALTY COMPANY, A CORPORATION, PLAINTIFFS,
v.
ESSEX COUNTY BOARD OF TAXATION AND CITY OF EAST ORANGE, A MUNICIPAL CORPORATION, DEFENDANTS. FLORA SHIENBLOOM, ET ALS., PLAINTIFFS,
v.
ESSEX COUNTY BOARD OF TAXATION AND BOROUGH OF VERONA, A MUNICIPAL CORPORATION, DEFENDANTS. APEX BUILDINGS, INC., A CORPORATION, ET ALS., PLAINTIFFS,
v.
ESSEX COUNTY BOARD OF TAXATION AND BOROUGH OF CALDWELL, A MUNICIPAL CORPORATION, DEFENDANTS. MUTUAL BENEFIT LIFE INSURANCE COMPANY, A CORPORATION, AND R.H. MACY, & CO., INC., A CORPORATION T/A L. BAMBERGER & CO., PLAINTIFFS,
v.
ESSEX COUNTY BOARD OF TAXATION AND TOWN OF BLOOMFIELD, A MUNICIPAL CORPORATION, DEFENDANTS. FADA RADIO AND ELECTRIC CO., INC., A CORPORATION, BELLEVILLE PROPERTIES, INC., SECONDARY REALTY CORPORATION, INC., EMANUEL P. LEWIS, CHARLES H. ROBERTS, JOHN AVRUTIS, DAVID B. WILTSEK AND BESSIE VANIEWSKI, PLAINTIFFS,
v.
ESSEX COUNTY BOARD OF TAXATION AND TOWN OF BELLEVILLE, A MUNICIPAL CORPORATION, DEFENDANTS. Case Nos. 1, 2, 3, 4, 5, 6, 7
Superior Court of New Jersey, Law Division.
Decided December 2, 1952.
*256 Case No. 1:
Mr. Herbert J. Hannoch and Mr. Joseph L. Lippman, attorneys for all plaintiffs other than B. Altman & Co. (Mr. Morris Weinstein of counsel).
Messrs. Martin & Reiley, attorneys for plaintiff B. Altman & Co.
Mr. Theodore D. Parsons, Attorney-General of New Jersey (Mr. James Rosen, Assistant Attorney-General, appearing), for defendant Essex County Board of Taxation.
Mr. Donald Karrakis, attorney for defendant City of East Orange.
Case No. 2:
Mr. Selick J. Mindes, attorney for plaintiffs.
For defendants, same as Case No. 1.
*257 Case No. 3:
Messrs. Sanderson & Engel, attorneys for plaintiffs.
For defendants, same as Case No. 1.
Case No. 4:
Messrs. Boyd, Dodd, Keer & Booth, attorneys for plaintiffs.
For defendant Essex County Board of Taxation, same as Case No. 1.
Mr. William J. Camarata, attorney for defendant Borough of Verona.
Case No. 5:
Mr. Herbert J. Hannoch and Mr. Joseph L. Lippman, attorneys for plaintiffs (Mr. Morris Weinstein of counsel).
For defendant Essex County Board of Taxation, same as Case No. 1.
Mr. Julius Y. Krill, attorney for defendant Borough of Caldwell.
Case No. 6:
Messrs. Hannoch, Lasser, Weinstein & Myers, attorneys for plaintiffs.
For defendant Essex County Board of Taxation, same as Case No. 1.
Mr. Joseph D. Lintott, attorney for defendant Town of Bloomfield.
*258 Case No. 7:
Messrs. Levy & Krauss, attorneys for plaintiff Fada Radio and Electric Co., Inc.
Messrs. Hannoch, Lasser, Weinstein & Myers, attorneys for all other plaintiffs.
For defendant Essex County Board of Taxation, same as Case No. 1.
Mr. Lawrence E. Keenan, attorney for defendant Town of Belleville.
HUGHES, J.S.C.
By these actions in lieu of the former prerogative writ of certiorari, several groups of taxpayers complain of the action of the Essex County Board of Taxation in revising assessments upon their respective properties for the tax year 1952, such action purporting to have been taken under sections of the statute vesting in the county board of taxation supervisory control for the purpose of examining, correcting, equalizing and revising assessments as first determined by the local assessors and listed and filed with it.[1]
*259 Since these assessments are so subject to control by the county board, and since the collectors of the municipalities are bound by the corrections made in the assessment lists, final assessments responsive to the action of the county board herein complained of have been effected, and the respective municipalities have been joined with the county board as defendants. Assessments levied on property in the first instance by the assessors are not complete until the county board certifies the assessor's duplicate to the tax collector. Middletown v. Ivins, 102 N.J.L. 36 (Sup. Ct. 1925); Hackensack Water Co. v. Division of Tax Appeals, 2 N.J. 157 (1949).
In the several complaints essentially similar charges are made of illegality of the action of the county board, and unjust, unlawful and unconstitutional discrimination against *260 the taxpayers by the assessments revision so ordered. Before issue was joined on these allegations the complaint basic to the litigation, that filed in the case first above captioned, survived a motion to dismiss on the ground that the Law Division lacked jurisdiction (Baldwin Const. Co. v. Essex County Bd. of Taxation, 21 N.J. Super. 370 (Law Div. 1952)).
Defendants having answered in defense of the action complained of, now move for summary judgment on the pleadings, contending that the complaint evidences not only lack of jurisdiction in the court, but that any jurisdiction which may exist in the premises should not be exercised in view of the failure of the plaintiffs to exhaust administrative remedies available to them by appeal from the assessments to the county board[2] and thence to the Division of Tax Appeals,[3] the legislative scheme being to provide a review of assessed valuations first in the county board of taxation and secondly in the Division of Tax Appeals. Hackensack Water Co. v. Division of Tax Appeals, supra.
The exhaustion of such remedies is indeed required before proceedings in lieu of prerogative writ are maintainable, "except where it is manifest that the interests of justice require otherwise." (Rule 3:81-14) Plaintiffs insist on grounds to be noticed hereafter that they are not, on the basis of the pattern of grievance and claim for relief reflected in their complaints, remitted to exhaustion of such remedies. *261 From the judgment on appeal of the Division of Tax Appeals, an appeal goes to the Appellate Division of the Superior Court, by force of Rule 3:81-8. Such is the usual course of appeal litigation envisaged in the present practice, from the original assessment of the tax to the scrutiny of the appellate courts.
The defendants further suggest on the instant motion that since the county board is a state administrative agency (Warren v. Hudson County, 135 N.J.L. 178 (E. & A. 1946)), and since plaintiffs characterize the assessments revision of the county board as an "order" and an "action" of finality, at least in the light of its immediate and allegedly unconstitutional infringement of their property rights, the matters complained of constitute a "final decision or action" of such board, subject to review on direct appeal to the Appellate Division under Rule 3:81-8, supra, and that, accordingly, intervention by the Law Division in lieu of certiorari is inadmissible.
Before reviewing the complaint in appraisal of its sufficiency to invoke the questioned jurisdiction of the court, it should be noticed that plaintiffs contend, in view of the identity of substance in the grounds urged in support of the instant motion and of that disposed of by the Law Division (Baldwin Const. Co. v. Essex County Bd. of Taxation, supra), that such conclusion, as the "law of the case," is dispositive and binding on the court at present. There is considerable force to this argument for it must be conceded that the principal clash of view on that motion involved, as here, the impact of the rule of exhaustion of remedies on the asserted jurisdiction of the court. The adequacy of the complaint was there examined to assess the manifest requirements of the interests of justice under Rule 3:81-14, supra. I do not believe defendants suggested there, at least with emphasis, the availability of direct appeal under Rule 3:81-8, supra, to the Appellate Division. Nor had there been then the joinder of factual issue, regarded by defendants at this juncture as significant on the question of "whether or not *262 the matter is ripe, as a matter of policy, for judicial determination." Nolan v. Fitzpatrick, 9 N.J. 477 (1952). Moreover, new parties have come in, and although their interests and contentions reflect no widening of the issues then submitted, they were not heard thereon at that time. On the whole, and although I find myself in basic accord with the views of the learned judge who decided that motion, I feel that my decision should rest, independently thereof, on the broad merits of the motion now before me, which will have the incidental effect of entirety in determination, making complete review of my action available.
The complaints recount the progressive making of assessments in the statutory formula, in that assessments were made on plaintiffs' real, and in some instances their personal, property for the tax year 1952 by the local assessors and recorded in the statutory assessment lists and duplicates filed on or about January 10, 1952 with the county board; that such board met with the assessors, conformably to the statute, on January 25, 1952 for the purpose of equalizing assessments of real property as among the several districts, no business of consequence as concerning the instant assessments having been considered. The complaint alleges that on March 10, 1952, the county board by telephone instructed the assessors to refrain from completing their tax records because the county board was contemplating changes in certain assessments, and shortly thereafter the assessors received memoranda from the county board as to various changes. On March 20, 1952, the board issued an order purporting to correct and revise the tax lists of assessments and directing such changes in assessments to be made. The assessors, or certain of them, met again with the county board on a telegraphic summons from the board on March 24 and some of the assessors expressed disagreement with the order of the county board, and argued their reasons therefor, to the effect that the random ("picking out properties here and there") selection of properties for the increasing of assessments "resulted in unfair and arbitrary treatment of those *263 taxpayers and required them to pay an unfair share of the taxes of the municipality."
To a request that it disclose the basis for its changes in assessments, the county board demurred on the ground that such information was confidential, in which position, apparently, it could claim some justification, in view of the wide area of informational source approved by our courts in addition to the view and investigation directed by statute. N.J.S.A. 54:3-15; N.J.S.A. 54:4-47; Middletown v. Ivins, supra. These objections, however, are said to have elicited an admission by the county board president that limitations of time, information and funds for full investigation made it impossible for the board fully to comply with its statutory obligation of revision, correction and equalization of assessments; that accordingly, the board had undertaken a partial adjustment of some of the assessments. The possibility, even the probability, of error under these circumstances was conceded and the assessors were reminded that dissatisfied taxpayers had their remedy for correction of any such error.
The motion for summary judgment under Rule 3:56 searches the record of pleadings and pre-trial proofs for the real existence of a triable issue of material fact, for its granting depends upon a showing "palpably that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." On the other hand, the motion for judgment under Rule 3:12-3 (if made on purely legal grounds confined to the pleadings) measures the content of the complaint alone, to determine whether it fulfills the requirements of Rule 3:8-1 in setting forth a valid factual case entitling the pleader to relief. This motion discards legal conclusions, ambiguities of assertion and the like, and precipitates the material allegations of fact. This residue of well-pleaded fact is accepted as true under Rule 3:12-3, supra, as it is under the federal rule which is its counterpart. Federal Rules Civil Procedure, Rule 12(c), 28 U.S.C.A.; Hackensack *264 Water Co. v. North Bergen Twp., 103 F. Supp. 133 (D.C.N.J. 1952). The movant admits not only the well-pleaded facts, but all legitimate inferences which they accommodate. Kelly v. Hoffman, 137 N.J.L. 695 (E. & A. 1948). The power to exercise judgment on the pleadings is so drastic in result that it is exercised sparingly, and only in case the pleading, liberally construed in favor of the pleader, is clearly and palpably insufficient in a legal sense. Evangelista v. Public Service Coord. Transport, 7 N.J. Super. 164 (App. Div. 1950).
With these standards in mind it remains to examine the complaints which are asserted to allege a purposeful and unjust discrimination against plaintiffs in the revising of assessments upon their properties;[4] extensive documentation of these charges is set out in the complaints, some aspects of which are summarized in the brief of the plaintiffs Baldwin Construction Co., et al., filed herein.[5]
*265 Crediting the complaints with the reasonable inferential breadth to which their factual allegations are entitled, it is obvious that they charge unjust, arbitrary and intentional discrimination in the revising of the assessments, which would bring such action within the condemnation of Section I of the Fourteenth Amendment to the Constitution of the United States, as distinguished from mere errors of judgment having the possible effect, but not the apparent purpose, of discrimination in its commonly understood sense. Sunday Lake Iron Co. v. Twp. of Wakefield, 247 U.S. 350, 38 S.Ct. 495, 62 L.Ed. 1154 (1918); Delaware, Lackawanna and Western Railroad Co. v. City of Hoboken, 16 N.J. Super. 543 (App. Div. 1951), reversed other grounds, D.L. & W.R.R. Co. v. City of Hoboken and State of New Jersey, 10 N.J. 418 (Sup. Ct. 1952). It has been said that "* * * mere errors of judgment do not support a claim of discrimination, * * * there must be something more  something which in effect amounts to an intentional violation of the essential principle of practical uniformity." Sioux City Bridge Co. v. Dakota County, 260 U.S. 441, 43 *266 S.Ct. 190, 192, 67 L.Ed. 340 (1923). This classification of the cases pleaded, into the category of constitutionally unsound discrimination brings us to the focal question on the motion, that is whether the administrative relief available is such as to justify withholding the remedy in lieu of the former writ of certiorari, in the light of the manifest requirements of justice. Rule 3:81-14, supra. The motion thus invokes a judicial determination as to the nature and scope of that administrative remedy.
The taxpayers insist that neither the county board of taxation, nor the Division of Tax Appeals, as administrative tribunals, has or will exercise authority to reduce assessments below true value, even where unlawful (unconstitutional) discrimination exists. And it is undeniable that for many years conflict has existed between our courts, as well as our tax tribunals, on the one hand and the United States Supreme Court on the other, on the issue of relief from tax assessments discriminatory in the sense of the Fourteenth Amendment. A landmark decision was that of our former Supreme Court in Royal Mfg. Co. v. Board of Equalization, 76 N.J.L. 402 (1908), which held that in view of the statutory requirement that property be taxed at its true value,[6] the taxpayer discriminated against was remitted to a form of relief described as follows:
"* * * so that the fact that the property of A. is assessed at its true value, and the property of other taxpayers within the same district is assessed below its true value, affords A. no ground for demanding a reduction of his valuation, though it does entitle him to apply for an increase in the valuation of the others."
The United States Supreme Court has not hesitated to deny the adequacy of this relief to protect the taxpayer's rights *267 under the Fourteenth Amendment (Sioux City Bridge Co. v. Dakota County, supra; Iowa-Des Moines National Bank v. Bennett, 284 U.S. 239, 52 S.Ct. 133, 76 L.Ed. 265 (1931)), even where the more apt relief of reducing the faulty assessment would represent a departure from state law, on the principle "that where it is impossible to secure both the standard of the true value, and the uniformity and equality required by law, the latter requirement is to be preferred as the just and ultimate purpose of the law." Cumberland Coal Co. v. Board of Revision, 284 U.S. 23, 52 S.Ct. 48, 50, 76 L.Ed. 146 (1931).
In 1927 and again in 1934, long after the decision in Sioux City Bridge Co. v. Dakota County, supra, had delineated so clearly the federal rule on the subject, our former Supreme Court withheld certiorari in deference to our constitutional and statutory formula of taxation at "true value" (Hackensack Water Co. v. State Board, 104 N.J.L. 48 (Sup. Ct. 1927); Lehigh Valley Ry. Co. v. State Board, 12 N.J. Misc. 673 (Sup. Ct. 1934)), reemphasizing in the latter case the "established law of this state that the fact that other property in a taxing district is assessed for valuation at less than its true value affords no ground for reducing the assessment placed upon the property of a complaining taxpayer below the true value thereof," citing Royal Mfg. Co. v. Board of Equalization, supra, and confirming that the "law, on this point, is also settled and controlling."
In this posture and as lately as 1946, the United States Supreme Court considered the Royal doctrine as established in a long line of New Jersey decisions, and held that there was "such uncertainty concerning the New Jersey remedy as to make it speculative whether the State affords full protection to the federal rights," i.e., rights under the Fourteenth Amendment. Hillsborough Twp. v. Cromwell, 326 U.S. 620, 66 S.Ct. 445, 449, 90 L.Ed. 358.
More recently, however, there appears persuasive evidence of a change in our judicial thinking, to the effect that even a constitutional or statutory mandate to assess at full value *268 must yield to the rights guaranteed by the Fourteenth Amendment, even before vindication of those rights in the federal courts becomes necessary. It may be that changes wrought by our 1947 Constitution account for this belated acceptance of the federal doctrine. Our constitutional concept of taxation has changed from "true value" to uniform standards of value.[7] So, too, judicial changes, such as the superseding of the ancient writ of certiorari by Rule 3:81-1, may be of significance. That writ, inter alia, was the vehicle of review of judgments of the former State Board of Tax Appeals; its allowance was discretionary, and its denial not appealable to the former Court of Errors and Appeals (Post v. Anderson, 111 N.J.L. 303 (E. & A. 1933)); and this status left it so optional with those courts to enforce or to fail to enforce rights under the Fourteenth Amendment, as to justify acceptance of jurisdiction by the federal courts to protect those rights, even against the general jurisdictional rule immunizing state taxation from assault in the federal courts. Matthews v. Rodgers, 284 U.S. 521, 52 S.Ct. 217, 76 L.Ed. 447 (1932); Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943).
For that appellate function of the superseded writ, there is substituted the appeal as of right from the final decision of the Division of Tax Appeals to the Appellate Division of the Superior Court. Rule 3:81-8, supra. The result is that since 1948 the taxpayer may obtain, as of right, the judgment of New Jersey appellate courts on the constitutional tax questions affecting his rights under the Fourteenth Amendment, as distinguished from the "uncertainty surrounding the state remedy" commented upon in the Hillsborough case, supra.
*269 To whatever extent these or other developments are responsible, there have been authoritative pronouncements presaging the abandonment of the Royal doctrine. In Jersey City v. Division of Tax Appeals, 5 N.J. Super. 375 (App. Div. 1949), our Appellate Division held that in a case of disparity in valuation assessments representing unconstitutional discrimination under the Sioux City rule, supra, the taxpayers would "have the opportunity to prove the fact before one or other of the tax boards." In Hackensack Water Co. v. Twp. of North Bergen, 8 N.J. Super. 139 (App. Div. 1950), the Appellate Division speaking through the same learned judge in reviewing and approving a denial of leave by the Division of Tax Appeals to permit a taxpayer to amend a petition of appeal to add a charge of discrimination in assessment, commented that in Jersey City v. Division of Tax Appeals, supra: "We said that a taxpayer may raise the question of discrimination and have relief before the County tax board or the Division of Tax Appeals." Although the court in neither instance specified in terms the type of relief it prophesied would be obtainable before the tax tribunals, whether that available under the Royal principle, or the relief designated by the Hillsborough decision as the only constitutionally satisfactory one, it is clear that it meant the latter, if only from the warmth of its approval of the principle of the Sioux City and Hillsborough cases. In Delaware, Lackawanna and Western Railroad Co. v. City of Hoboken, 16 N.J. Super. 543, supra, the same court again by the same learned spokesman, said:
"A discrimination between taxpayers, so that one is assessed upon the full value of his property and others are assessed upon only a fraction of full value, violates the Fourteenth Amendment to the Federal Constitution. * * * It was formerly considered that the only remedy of the taxpayer who was the victim of the discrimination was a proceeding to increase the assessments of other taxpayers, but now we recognize that such a remedy is not enough and that he may rightfully demand that his own assessment be reduced to the common level. The constitutional mandate to assess at full value must yield to the even more fundamental requirement of relative equality."
*270 Insofar as these latter views affect the enforcement in the tax tribunals of rights of the general taxpayer, it is noticed that they were expressed in a case involving assessments of Class II railroad property under N.J.S.A. 54:29A-1, et seq., under a somewhat elaborate formula adaptable uniquely to railroad property, the statute specifically empowering the appellate tax tribunal to correct, adjust and equalize the tax, inter alia, upon its finding "that there has been illegal discrimination in the assessment" (N.J.S.A. 54:29A-33), an authority which is not conferred either on the county board or the Division of Tax Appeals, on appeal of assessments made under the General Tax Act, as here. On the contrary, the county board on such appeal is directed by statute to "revise and correct the assessment in accordance with the true value of the taxable property" (N.J.S.A. 54:3-22, as most recently amended in 1946, L. 1946, c. 161, p. 730, § 17); and the Division of Tax Appeals on reviewing such determination has no more specific nor informative authority by statute than to "review such action and proceedings and give such judgment therein as it may think proper." N.J.S.A. 54:2-35.
On the basis of the views expressed by the Appellate Division in 1949, 1950 and 1951, as above noted, the United States District Court for the District of New Jersey declined jurisdiction in a case in which such unconstitutional discrimination was well pleaded, on the theory that there exists presently in the courts of New Jersey a plain, adequate and complete remedy at law, to the exhaustion of which the taxpayer was remitted in protection of his federal rights, before intervention by the federal courts would be justified. Hackensack Water Co. v. North Bergen Twp., 103 F. Supp. 133, supra. On November 28, 1952, the United States Court of Appeals for the Third Circuit, 200 F.2d 313, 316, affirmed this judgment, holding that:
"With the present pertinent state law clearly allowing a taxpayer to raise the question of unlawful discrimination, the situation which called forth the Hillsborough decision of 1946 no longer exists in *271 New Jersey. Appellant, as we see it, needs only to press its 1948 assessment appeal in order to have that issue passed upon and determined by the state courts. Having that course open to it appellant cannot use the Hillsborough principle to justify its suit in the district court."
Neither of these latter opinions ventured, nor need they have, any prognostication of the impact of a taxpayer's charge of unconstitutional discrimination not in excess of "true value" on the tax tribunals of New Jersey as distinguished from its courts, for the denial of federal jurisdiction depends on the existence of ultimate legal remedy in the state courts and not on the adequacy of administrative relief, the denial of which would be appealable of right to those courts.
These opinions, considered in the light of the settled federal law on the subject, are projected, with some logic, as accomplishing the decisional doom of the Royal doctrine in the courts. They do seem to me, however, to leave unanswered the question as to whether the instant plaintiffs would not face legal frustration in the tax tribunals themselves, impaled as these bodies might feel themselves to be on the horns of a dilemma of confusing aspects. On the one hand, the statute directs them to correct assessments "in accordance with the true value of the taxable property." As administrative tribunals, they have long forsworn the authority of deciding the constitutionality of a state statute. Erie Railroad System v. Walsh, 25 N.J. Misc. 269 (Div. Tax App. 1947); Jamouneau v. Newark, 25 N.J. Misc. 345 (Div. Tax App. 1947). Regarding its own powers, the Division of Tax Appeals has described itself as a special statutory tribunal, strictly limited within the bounds of jurisdiction prescribed by the Legislature. Hoboken v. Kelly, 21 N.J. Misc. 193 (St. Bd. Tax App. 1943); North Bergen Twp. v. Hackensack Water Co., 26 N.J. Misc. 6 (Div. Tax App. 1947). It has considered the constitutional implications of discriminatory assessments as beyond its purview (Duke Power Co. v. Hillsborough Twp., 20 N.J. Misc. 240 *272 (St. Bd. Tax App. 1942)), and this position, of course, has been supported by the courts, for determination of the constitutionality of an act of the Legislature rests with a judicial body alone. In Schwartz v. Essex County Board of Taxation, 129 N.J.L. 129 (Sup. Ct. 1942), affirmed 130 N.J.L. 177 (E. & A. 1943) our former Supreme Court, by Mr. Justice Colie, declared that the former State Board of Tax Appeals had no authority to weigh the constitutionality of a statute under the State Constitution and the Fourteenth Amendment, and that it was the duty of the administrative body to accept the statute as constitutional until such time as it had been declared unconstitutional by a qualified judicial body. In that case, incidentally, prosecution of writ of certiorari direct to the county board of taxation, was approved against the rule of exhaustion of remedies for the very reason that the State Board of Tax Appeals could not be expected to decide the constitutionality of a statute on which the taxpayer's case depended.
As against these impelling reasons to comply with the statute mentioned, the tax tribunals are faced with that concept of their duty expressed in the recent cases mentioned. These cases tell the administrative bodies, in effect, that they must afford relief against discrimination and that the taxpayer "may rightfully demand that his own assessment be reduced to the common level. The (constitutional) mandate to assess at full value must yield to the even more fundamental requirement of relative equality." (Parentheses supplied to suggest substitution of word "statutory.") But no case is suggested to me in which either (1) the administrative refusal of relief from a discriminatory assessment (if within "true value") has been reversed by a state court, or (2) in which one of the administrative agencies has relieved from a discriminatory assessment, within the boundary of "true value," or (3) in which a court specifically, for purposes of decision, has determined that the "true value" delineation of the administrative body's duty on appeal is unconstitutional to the extent that it forestalls relief from a *273 discriminatory assessment not above "true value." The federal courts had long pointed to the constitutional vice of discrimination, without perceptible affirmative effect on either our courts or tax tribunals, and although our courts, as stated, now have confirmed the constitutional superiority of relative equality to the concept of "true value," and although our organic law of 1947 has recognized the principle, the statute, N.J.S.A. 54:3-22, supra, remains as it was, and the "true value" theme guides the assessment, statute-wise, from its birth, N.J.S.A. 54:4-1,[8] through the course of its administrative examination, as noted.
If the legislative pattern has lagged behind the developments of the law, it seems probable that transcendent uncertainty will haunt the course of this litigation if remanded now to the tax tribunals. Conceivably, after the most burdensome of litigations of these multiple appeals, the constitutional question will emerge into the sunlight of judicial scrutiny and a definitive rule, measuring the constitutionality of the "true value" concept in specific terms, will be forthcoming, reversing and remanding to the tax tribunals, so that the complaining taxpayers will face, in effect, two extensive litigations. In all deference to the recent pronouncements of our Appellate Division (and I am convinced of the soundness of their principle), I see no evidence to justify the hope that the tax bodies will abandon their adherence to what they (fortified by very respectable judicial authority in the recent past) conceive to be their duty to adhere to the statutory directive keyed to "true value," and to that extent unmindful of discrimination within the confines of "true value." A further impediment exists on the county board appeal level, for that body in its quasi-judicial capacity is called upon to review on appeal that which it has done in its administrative capacity under N.J.S.A. 54:4-46, 47, supra, *274 and to consider with judicial impartiality an asserted wrong which it, administratively, had theretofore stoutly maintained, over substantial and identical objections, was right and just. Certainly, this dualism of function is the necessary legislative design, and there can be no doubt that the men of honor comprising this body would consciously exert themselves to objectivity, but the pattern of incongruity thus established adds little to the premise of clarity, sufficiency and adequacy of the administrative remedy pointed to as the alternative to immediate relief in this court.
In this posture what are the "manifest requirements of the interests of justice" presented by Rule 3:81-14, supra, as the guide to enforcement of the rule of exhaustion of administrative remedy? That standard must import the premise that to remit to the exhaustion of administrative remedy, such remedy must be certainly available, clearly effective and completely adequate to right the wrong complained of. Traditionally, the former prerogative writs quickened where justice pointed to the urgency of relief and the futility of the administrative process, as where the jurisdiction of the statutory tribunal was questioned short of final judgment (Schwartz v. Essex County Board of Taxation, 130 N.J.L. 177 (E. & A. 1943)); where a constitutional question existed, insoluble in the administrative forum (Schwartz v. Essex County Board of Taxation, 129 N.J.L. 129, supra); where the facts and the applicable law were clear (Lane v. Bigelow, 135 N.J.L. 195 (E. & A. 1947)); where a pure legal question existed (Conaway v. Atlantic City, 107 N.J.L. 404 (Sup. Ct. 1931)); where the statutory remedy was not final and effective (as to accomplish an ouster from office) (Koven v. Stanley, 84 N.J.L. 446 (Sup. Ct. 1913)); where "important principles of law" required a prompt "judicial construction" (State v. Betts, 24 N.J.L. 555 (Sup. Ct. 1854)).
The absolutism of the rule of exhaustion of remedies was stoutly denied before the superseding of the former prerogative writs (Lane v. Bigelow, supra; Redcay v. State Board *275 of Education, 128 N.J.L. 281 (Sup. Ct. 1942)) and has been no less rejected, where the interests of justice required, since 1948. In Ward v. Keenan, 3 N.J. 298 (1949), it was emphasized that the existing substantive law surrounding the former prerogative writs survived the superseding of the writs and formed a field for scrutiny for purposes of guidance in the just application of Rule 3:81-14, supra, the court recalling, inter alia, the grant of certiorari in cases involving jurisdiction, whereby "the parties would be spared the vexation of a useless hearing." In Waldor v. Untermann, 10 N.J. Super. 188 (App. Div. 1950), Justice Jacobs commented:
"Indeed, when Rule 3:81-14 was adopted it was well recognized that there may be other situations in which the interests of justice will clearly dictate immediate judicial determination without awaiting the administrative process and the very purpose of its general and comprehensive phraseology was to permit these to be dealt with properly as they arise."
Again, the Supreme Court recalled the motivation for including in Rule 3:81-14, supra, the saving clause "except where it is manifest that the interests of justice require otherwise," adverting to the court's awareness of the "inconvenience, expense and injustice that must necessarily flow from the arbitrary enforcement of the doctrine of the exhaustion of administrative remedies in each and every case, regardless of the circumstances and the interests of justice." Nolan v. Fitzpatrick, supra. In carefully guarding the rule from the supposition that the exception to Rule 3:81-14, supra, was limited to the classes of cases then being discussed, the court charted the duty of this court in the very type of case under consideration here, by saying:
"In every case the court should determine whether it is in the interest of justice to dispense with the requirement that the plaintiff exhaust other judicial or administrative remedies, bearing in mind, however, that Rule 3:81-14 itself dictates that the interest of justice is ordinarily best served by requiring the plaintiff to first exhaust his other remedies and that it is only in special circumstances that the interest of justice will require otherwise."
*276 Under these standards, I have no doubt that it is my duty to deny the motion and exercise the jurisdiction invoked by the complaints, for the conclusion seems inescapable to me that for the reasons previously discussed the administrative remedy is at best uncertain, if it is not, indeed, nonexistent in the practical sense.
As to the suggestion that a direct appeal should go under Rule 3:81-8, supra, to the Appellate Division in lieu of intervention in the nature of the former writ of certiorari, I think that rule encompasses that portion of the certiorari function formerly available for purpose of appeal or review, which imported, if the agency had a reviewing capacity, a judicial trial and determination there, to be reviewed on certiorari. This is the "final action" or "decision" (in cases where the machinery for such trial and determination exists, of course) envisaged by that rule. The review of the administrative act, although also by certiorari in the former practice, was not the same proceeding in substance, but was comparable to the issue advanced by the complaints in the instant case. The distinction was noted in Middletown v. Ivins, supra.
The motion for judgment on the pleadings and to dismiss the complaints is denied. An appropriate order should be presented by counsel on notice.
NOTES
[1] N.J.S.A. 54:3-13 "Each county board of taxation shall secure the taxation of all property in the county at its true value, in order that all property, except such as shall be exempt by law, shall bear its full, equal and just share of taxes."

N.J.S.A. 54:3-15 "The members of each county board, in carrying into effect the provisions of this title, shall view and inspect, so far as possible in all cases, the various assessed properties in the various taxing districts in the county, and make their revision and correction after such view and inspection. The board shall meet from time to time as it shall deem proper."
N.J.S.A. 54:3-16 "Each county board of taxation shall have supervision and control over all officers charged with the duty of making assessments for taxes in every taxing district in the county. * * *"
N.J.S.A. 54:4-35 "The assessor shall begin the work of making assessments upon real and personal property on October first in each year and shall complete the work by January tenth following, on which date he shall attend before the county board of taxation and file with the board his complete assessment list, and a true copy thereof, to be called the assessor's duplicate, properly made up and legibly written in ink, to be examined, revised and corrected by the board as hereinafter provided." As amended L. 1942, c. 281, p. 1096, § 4; L. 1943, c. 120, p. 354, § 4.
N.J.S.A. 54:4-46 "Upon the filing of the assessment lists and duplicates by the assessors with the county board of taxation, the board shall meet for the purpose of examining, revising and correcting the tax lists and duplicates. Any assessor shall attend before the board at such time and place as it may direct, and shall, under the direction and supervision of the board, make up and prepare corrected tax lists and duplicates."
N.J.S.A. 54:4-47 "The county board may adjourn from time to time in the discharge of its duties, and may, after investigation, revise, correct and equalize the assessed value of all property in the respective taxing districts, increase or decrease the assessed value of any property not truly valued, assess property omitted from any assessment, as provided by law, at its true value, and in general do everything necessary for the taxation of all property in the county equally and at its true value." As amended L. 1947, c. 413, p. 1287, § 15.
N.J.S.A. 54:4-48 "The county board of taxation shall enter all changes or additions on the various tax lists and duplicates * * *. It shall cause each assessor to enter in appropriate columns upon the tax lists and duplicates for his respective taxing district the net corrected value assessed to each person for both real and personal property * * *."
[2] N.J.S.A. 54:3-21 "A taxpayer feeling aggrieved by the assessed valuation of his property, or feeling that he is discriminated against by the assessed valuation of other property in the county, * * * may * * * appeal to the county board of taxation * * *." As amended L. 1945, c. 125, p. 479, § 1.

N.J.S.A. 54:3-22 "The board * * * shall summarily hear and determine the appeal, and revise and correct the assessment in accordance with the true value of the taxable property. * * *" As amended L. 1946, c. 161, p. 730, § 17.
[3] N.J.S.A. 54:2-39 "Any appellant who is dissatisfied with the judgment of the county board of taxation upon his appeal may appeal from that judgment to the Division of Tax Appeal * * *." As amended L. 1944, c. 240, p. 799, § 1; L. 1946, c. 161, p. 726, § 8.
[4] "* * * the County Tax Board violated legal principles in directing the increased assessments upon plaintiffs' properties, and their action in so doing was intentional and violative of the principle of practical uniformity in assessment." (Par. 24)

"* * * the action of the County Tax Board with respect to their property was discriminatory, arbitrary and capricious, and that the result thereof is to require plaintiffs to bear an excessive, discriminatory and disproportionate share of the tax burden." (Par. 25)
"* * * the action of the County Tax Board aforesaid visits and imposes upon plaintiffs an excessive, discriminatory, disproportionate and unequal share of the tax burden, in violation of plaintiffs' constitutional rights as aforesaid, and that as a result thereof, plaintiffs' properties are being taken without due process of law in violation of rights guaranteed to it by such constitutions." (Par. 27)
[5] "By this order,

1. The Local Assessors' assessments of certain, not all, property within a certain district on the south side of Central Avenue, were increased approximately 100% as to land and 33 1/3% as to buildings;
2. Assessments of some, not all, properties within a certain district on the north side of Central Avenue, were increased 200% as to land and 33 1/3% as to buildings;
3. The changes in building assessments were made without regard to age or physical condition or other differentiating factors;
4. Out of approximately 300 apartment houses in all of East Orange, only one assessment was increased;
5. Out of approximately 20,000 taxpayers assessable for personal property, only 13 were selected for increases; and
6. No changes were made in the assessments of any residential properties.
Some of the effects of this order and the action taken thereunder, as stated in the complaint, are:
1. The land of one plaintiff is assessed at $1,120 per front foot whereas land immediately adjacent (not affected by the order) is assessed at only $420 per front foot;
2. The land at the southeast corner of Central Avenue and Harrison Street is assessed at $99,000 whereas a parcel of land of substantially the same size on the opposite corner (not affected by the order) is assessed at only $19,000;
3. Land at the northwest corner of Central Avenue and Halsted Street is assessed at $1,000 per foot whereas land at the northeast corner is assessed at only $350 per foot. The buildings on both said parcels are substantially of the same age and construction, but are assessed at widely varying amounts;
4. Other similar disparities exist.
[6] 1844 Const. Art. IV, § 7, par. 12 "Property shall be assessed for taxes under general laws, and by uniform rules, according to its true value."

N.J.S.A. 54:3-13 "Each county board of taxation shall secure the taxation of all property in the county at its true value, in order that all property * * * bear its full, equal and just share of taxes."
[7] 1947 Const., Art. VIII. § 1, par. 1. "Property shall be assessed for taxation under general laws and by uniform rules. All real property * * * shall be assessed according to the same standard of value; * * *."
[8] N.J.S.A. 54:4-1 "All property, real and personal * * * shall be subject to taxation * * * at its true value, and shall be valued by the assessors of the respective taxing districts. * * *" (Most recently amended in 1947; L. 1947, c. 413, p. 1287, § 14.)